2012 COA 92

**Thomas F. McLAUGHLIN,**
**Plaintiff–Appellee,**

v.

**BNSF RAILWAY COMPANY,**
**a Delaware corporation,**
**Defendant–Appellant.**

**No. 11CA0751.**

Colorado Court of Appeals,
Div. I.

June 7, 2012.

Haddon, Morgan and Foreman, P.C., Norman R. Mueller, Rachel A. Bellis, Denver, Colorado, for Plaintiff–Appellee.

Hall & Evans, L.L.C., Frederick T. Martinez, Alan Epstein, Jessie Pellant, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

¶ 1 Defendant, BNSF Railway Company, appeals the judgment entered and damages awarded after a jury trial in favor of its employee, plaintiff Thomas F. McLaughlin, on his statutory strict liability and negligence claims.

¶ 2 Among the issues the railroad raises are two that present matters of first impression in Colorado, both relating to damages.

¶ 3 First, did the district court err in giving the jury an "eggshell skull" or "thin skull" instruction because it also gave an instruction on apportioning damages for aggravation of a pre-existing condition? We conclude that giving both instructions may be appropriate, depending on the state of the evidence. We further conclude that, based on the evidence presented at trial in this case, the court did not err in giving an eggshell instruction, but did err in giving the aggravation instruction. Doing so, however, was harmless error because that instruction worked to the railroad's benefit.

¶ 4 Second, did the district court err in ruling that Mr. McLaughlin could seek recovery for lost wages even though he receives disability benefits under the Railroad Retirement Act (RRA) because of the injuries he sustained in the incident giving rise to his claims? We conclude that the district court did not err because those benefits are from a collateral source.

¶ 5 We further reject the railroad's other contentions of error, and therefore affirm.

I.   Background

¶ 6 Mr. McLaughlin was injured when a locomotive handbrake allegedly malfunctioned when he attempted to release it. He sued the railroad for negligence under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60, and for strict liability under both the Locomotive Inspection Act, 49 U.S.C. §§ 20701–20703, and the Safety Appliance Act, 49 U.S.C. §§ 20301–20306.

¶ 7 At trial, the railroad asserted, as relevant here, that Mr. McLaughlin's claimed injuries had not been caused by the handbrake incident. Alternatively, the railroad asserted that the jury should apportion damages because Mr. McLaughlin had preexisting conditions that the incident had merely aggravated. A jury found in Mr. McLaughlin's favor on all claims, concluding that the railroad was entirely at fault, and awarded him $1,830,000 in damages.

II.   Discussion

¶ 8 On appeal, the railroad contends that the district court erred by (1) admitting a transcript of the railroad's claims agent's post-incident interview of Mr. McLaughlin and denying the railroad's motion for new trial based on this admission; (2) improperly instructing the jury on the eggshell and aggravation doctrines; and (3) denying its motion in limine to preclude Mr. McLaughlin from presenting evidence of lost wages because of his receipt of RRA disability benefits or to reduce the damages award by the

amount of those benefits. We address each contention in turn.

## A. Admission of Interview Transcript

¶ 9 We reject the railroad's contentions that the district court abused its discretion by (1) admitting the post-incident interview transcript (prepared by the railroad's claims investigator) because it was hearsay; and (2) denying the railroad's motion for a new trial after its counsel discovered that someone had made a handwritten notation on the copy of the transcript that was admitted.[1]

### 1. Hearsay

¶ 10 We review the district court's decision to admit evidence for an abuse of discretion. *Bly v. Story,* 241 P.3d 529, 535 (Colo.2010); *D.R. Horton, Inc.-Denver v. Bischof & Coffman Constr., LLC,* 217 P.3d 1262, 1267 (Colo.App.2009). A court abuses its discretion where its decision is manifestly arbitrary, unreasonable, or unfair. *Saturn Sys., Inc. v. Militare,* 252 P.3d 516, 523 (Colo.App.2011); *D.R. Horton,* 217 P.3d at 1267.

¶ 11 Hearsay is a statement other than one made by the testifying witness that is offered to prove the truth of the matter asserted. CRE 801(c); *Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.,* 117 P.3d 60, 66 (Colo. App.2004). Hearsay is generally inadmissible, subject to certain exceptions. CRE 802; *Vista Resorts,* 117 P.3d at 66.

¶ 12 The railroad's counsel cross-examined Mr. McLaughlin in an attempt to show that he had fabricated his account of the handbrake incident or exaggerated his injuries. For example, counsel pointed out that Mr. McLaughlin had continued to work for several days after the incident and had modified his handwritten statement about the incident after he had consulted with medical professionals. Counsel then introduced, as relevant here, one page of the post-incident interview transcript to impeach Mr. McLaughlin's testimony that he had encountered unusual tension or pressure in operating the handbrake. Mr. McLaughlin admitted that he had not described such tension or pressure to the claims agent because he "was never asked."

¶ 13 On redirect examination, Mr. McLaughlin's counsel sought to introduce the entire transcript. The railroad's counsel objected, arguing that "[i]t's hearsay ... [a]nd when I used it, [Mr. McLaughlin] agreed with the statement, so it's not even for impeachment purposes." The court overruled the objection without explanation.

¶ 14 We perceive no abuse of discretion. As noted, though the railroad's counsel challenged Mr. McLaughlin's testimony about the handbrake tension or pressure, counsel also more generally challenged his description of the incident and his injuries. Consequently, the entire transcript of Mr. McLaughlin's interview about the incident was admissible as a prior consistent statement to rebut the general charge of fabrication. *See People v. Eppens,* 979 P.2d 14, 22–23 (Colo.1999) (the witness's prior consistent statement was admissible to rehabilitate her where defense counsel had attempted to discredit her testimony in its entirety); *People v. Elie,* 148 P.3d 359, 363 (Colo.App.2006) (where the defendant's impeachment "was not limited to specific facts but was instead a general attack on [the witness's] credibility," the district court properly admitted an entire

---

1. The railroad also contends that the transcript contained inadmissible hearsay within hearsay. It did not raise this contention in the district court, but asserts that its nonspecific, unexplained hearsay objection was sufficient to preserve the double hearsay contention for appellate review. We disagree. It is axiomatic that an appellate court considers only the specific grounds on which a party objected to evidence's admission in the district court. *Am. Family Mut. Ins. Co. v. DeWitt,* 216 P.3d 60, 65 (Colo.App. 2008) (requiring counsel to state a specific ground for objecting to the admission of evidence allows "judges [to] rule upon the objection in an informed and intelligent way; and opposing counsel [to] propose alternatives that address the concerns raised by the objection"), *aff'd,* 218 P.3d 318 (Colo.2009); *cf. Leiting v. Mutha,* 58 P.3d 1049, 1052 (Colo.App.2002) (considering a double hearsay argument where the defendant had "objected on the grounds that each document contained inadmissible hearsay" without further specifying those grounds or analyzing whether the defendant had preserved the issue). Because the railroad did not object to the transcript's admission on the ground that the transcript contained hearsay within hearsay, it failed to preserve that contention for our review.

videotape so that the jury could compare and contrast the differences among all of the witness's statements); *see also* CRE 801(d)(1)(B) (prior consistent statement is not hearsay and is admissible if the witness testifies at trial subject to cross-examination and the statement is offered to rebut a charge of recent fabrication or improper influence or motive).

¶ 15 Alternatively, even if we assume that the transcript was not admissible as including prior consistent statements, it was admissible to provide context for Mr. McLaughlin's testimony on cross-examination that he had not reported experiencing tension or pressure in operating the handbrake. It was not offered for the truth of the matter asserted, and therefore was not inadmissible hearsay. *See People v. Hagos*, 250 P.3d 596, 623 (Colo.App.2009) (where a party offers a statement for the limited purpose of putting a witness's responses in context, the statement is not offered for the truth of the matter asserted, and therefore is not hearsay); *Virgil v. Wachsmann*, 489 P.2d 344, 345 (Colo.App.1971) (not published pursuant to C.A.R. 35(f)) (witness testified on redirect about his entire interrogation of the parties to clarify a point elucidated on cross-examination); *cf.* C.R.C.P. 32(a)(4) ("If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which ought in fairness to be considered with the part introduced, and any party may introduce any other parts."); *People v. Davis*, 218 P.3d 718, 731 (Colo.App.2008) ("Under the rule of completeness, when one party introduces part of a written or recorded statement, the opposing party can introduce other parts of that statement.").

¶ 16 Therefore, we conclude that the district court did not abuse its discretion by admitting the entire interview transcript.

### 2. Notation

¶ 17 The district court has considerable discretion in ruling on a motion for a new trial, and we will not disturb its decision absent a clear showing of an abuse of discretion. *Vaccaro v. Am. Family Ins. Grp.*, 2012 COA 9, ¶ 40, 275 P.3d 750; *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 502 (Colo.App. 2011). The court should not grant a motion for a new trial where the error "did not prejudice or harm the party seeking a new trial, or where the trial resulted in substantial justice." *Citicorp Acceptance Co., Inc. v. Sittner*, 772 P.2d 655, 657 (Colo.App.1989); *accord Cissell Mfg. Co. v. Park*, 36 P.3d 85, 91 (Colo.App.2001); *Garcia v. Estate of Wilkinson*, 800 P.2d 1380, 1383 (Colo.App.1990).

¶ 18 After trial, the railroad moved for a new trial when its counsel discovered that someone, perhaps Mr. McLaughlin's counsel, had made the following notation on the admitted transcript: "Caveat = brake hurt π." The district court denied the motion, finding:

> [N]o prejudice to [the railroad] has been shown or can reasonably be inferred. The notation, by a person not identified on the document, merely states what was shown by overwhelming evidence throughout the trial to the point that it was essentially unrefuted except by argument of defense counsel: that the plaintiff was hurt by the brake. An additional stray handwritten note in the margin of a document to the same effect as copious other evidence did not prejudice [the railroad]. [The railroad]'s suggestion that the jury would have speculated that the note was an admission by [the railroad] is itself an unreasonable speculation. The reasonable inference from the note is merely that someone reading the transcript jotted in the margin what that person inferred from the plaintiff's transcribed statement....

¶ 19 We agree with the district court. The notation is cryptic: particularly to a nonlawyer, its meaning would likely be unclear. And though the notation may have been inadmissible, there was no indication in the transcript as to who had made it, and an overwhelming amount of properly admitted evidence proved that Mr. McLaughlin had been injured as a result of the defective handbrake. In short, the notation did not prejudice the railroad, and the district court therefore did not abuse its discretion by denying the motion for a new trial. *See Garcia*, 800 P.2d at 1383 (alleged error in admit-

ting evidence was not prejudicial and thus did not require a new trial).

## B. Eggshell and Aggravation Instructions

¶ 20 The railroad contends that the district court erred by giving an eggshell instruction because (1) it had not argued that the jury should decline to award any damages to Mr. McLaughlin because of his pre-existing conditions; and (2) the eggshell instruction contradicted the aggravation instruction. Apparently in the alternative, the railroad also contends that the court erred by declining to give its tendered special verdict form that, in accordance with the aggravation instruction, asked the jury to specify the percentage of damages it attributed to Mr. McLaughlin's pre-existing conditions.

¶ 21 The railroad's contentions require us to examine, first, when eggshell and aggravation instructions are appropriate as a legal matter and, second, whether the evidence introduced at trial was sufficient to justify giving each instruction. If we conclude that giving either instruction was inappropriate, we must then determine whether the error requires reversal. If we conclude that giving both instructions was appropriate, we must address the railroad's contention that the court should have given its tendered special verdict form, which it contends would have cleared up for the jury any potential confusion caused by language in the two instructions which, the railroad argues, appears to conflict.[2]

¶ 22 We conclude that the court properly gave the eggshell instruction and should not have given the aggravation instruction or told the jury in the modified verdict form that it should not award any amount capable of apportionment based on pre-existing conditions. But we also conclude that the errors in giving the latter instruction and the modified verdict form were harmless.[3]

### 1. Background

¶ 23 In his complaint, Mr. McLaughlin alleged that the defective handbrake had caused, as relevant here, aggravation of a pre-existing asymptomatic back condition, new back injuries, and a hernia on his left side. He was fifty-seven years old at the time of the handbrake incident.

¶ 24 Evidence presented at trial showed that Mr. McLaughlin had pre-existing back and hernia conditions. Regarding his back conditions, Mr. McLaughlin testified that, after the handbrake incident, his doctors had diagnosed him with pre-existing degenerative disc disease and other age-related deteriorating back conditions. He also said, however, that he had not experienced any back pain or problems before the incident. One of his treating doctors confirmed that Mr. McLaughlin had not felt "any significant ongoing pain, prior to the injury, that was acute

---

2. The railroad also contends in the alternative that the court erred by failing to give an instruction explaining to the jury how it should apply both the eggshell and aggravation instructions. We do not address this contention, however, because the railroad did not request such an instruction in the district court, and therefore failed to preserve the issue for review. *See* C.R.C.P. 51; *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 658 (7th Cir. 2011); *Mobell v. City & Cnty. of Denver*, 671 P.2d 433, 435 (Colo.App.1983); *see also Qwest Servs. Corp. v. Blood*, 252 P.3d 1071, 1087 (Colo.2011) (a party must request a limiting instruction in the district court to preserve the issue for appeal).

3. We acknowledge that Mr. McLaughlin characterized one of his injuries as "aggravation of a pre-existing condition," did not object to the aggravation instruction in the district court, and concedes that the instruction was appropriate on appeal. However, by arguing that the eggshell instruction was improper because it conflicted with the aggravation instruction, the railroad placed the propriety of the aggravation instruction at issue. *Cf. Grandote Golf & Country Club, LLC v. Town of La Veta*, 252 P.3d 1196, 1199 (Colo.App.2011) (where the statutes allegedly affecting a challenged ordinance would apply only if a previous ordinance was effective, appellate court could address the issue of the previous ordinance's effectiveness). Further, we are not bound by a party's concession of the applicable law. *See Bar 70 Enterprises, Inc. v. Tosco Corp.*, 703 P.2d 1297, 1306 (Colo.1985) ("[I]t always remains the independent responsibility of the court to decide the law applicable to a particular case and the legal sufficiency of the evidence in regard to a contested claim."). And we may affirm the district court based on any grounds that are supported by the record. *Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo.App.2004).

or chronic in nature, other than the sort of typical things that most people have, which is an occasional backache or something like that." He and another doctor also testified that most people who have such preexisting back conditions do not have persistent symptoms. The railroad did not present any evidence that Mr. McLaughlin's back conditions had been symptomatic immediately before the incident.[4]

¶ 25 As to the hernia, Mr. McLaughlin testified that although he had suffered a hernia on his right side when he was seven or eight years old, the hernia was treated at that time, and he had not experienced any problems related to the hernia until after the incident. Both parties presented evidence that Mr. McLaughlin was born with a so-called indirect, or congenital, hernia, which is a weakness in the abdominal wall that may result in a sac or small, forming hernia that makes a person more susceptible to a symptomatic hernia. However, it was undisputed that this hernia was asymptomatic before the handbrake incident. It was also undisputed that there was no way to know whether the hernia would have become symptomatic had the incident not occurred.[5]

¶ 26 At the close of evidence, the district court gave the following eggshell instruction, over the railroad's objection:

In determining the amount of plaintiff's actual damages, you cannot reduce the amount of or refuse to award any such damages because of any physical frailties, conditions or diseases of the plaintiff that may have made him more susceptible to injury, disability or impairment than an average or normal person.[6]

¶ 27 The court also gave the jury the following aggravation instruction:

If you find for plaintiff Thomas F. McLaughlin, you should compensate plain-

tiff for any aggravation of an existing disease or physical defect resulting from such injury.

If you find that there was an aggravation you should determine, if you can, what portion of plaintiff's condition resulted from the aggravation and make allowance in your verdict only for the aggravation. However, if you cannot make that determination or if it cannot be said that the condition would have existed apart from the injury, you should consider and make allowance in your verdict for the entire condition.

See 3 Fed. Jury Prac. & Instr. § 128:03 (6th ed.2011); FJI–Civ. 7th Cir. 9.04 cmt. c (2010). In deciding to give both instructions, the court reasoned that although the degenerative disc disease was a pre-existing condition warranting the aggravation instruction, the hernia was a congenital weakness for which an eggshell instruction was appropriate.

¶ 28 The court declined the railroad's request to give the jury a special verdict form asking it to specify what percentage of Mr. McLaughlin's damages was attributable to a pre-existing condition. Instead, it gave a verdict form which provided, in relevant part: "What amount do you find, if any, will fairly and adequately compensate the Plaintiff for all injuries and damages he sustained? Do not include ... any amount you find to be capable of apportionment to any pre-existing condition of Plaintiff."

### 2. Applicable Law

#### a. Provision of Jury Instructions

▆ ¶ 29 The district court has a duty to instruct the jury correctly on the law applicable to the case. *Steward Software Co. v. Kopcho,* 266 P.3d 1085, 1087 (Colo.2011).

---

**4.** Mr. McLaughlin testified that he had received treatment for one back condition (osteomyelitis) approximately four years before the incident, but that the treatment had resolved the condition and he had not experienced any residual problems.

**5.** One of Mr. McLaughlin's doctors testified that "[p]eople can live with hernias all their life and not know that they have a small defect."

**6.** As explained below, federal law governs the damages issues in this case. However, the instruction was taken from the pattern Colorado Jury Instructions for civil cases. *See* CJI–Civ. 4th 6:7 (2011).

¶ 30 We review the district court's finding that sufficient evidence exists to give an instruction for an abuse of discretion. *Id.; see Day v. Johnson,* 255 P.3d 1064, 1067 (Colo.2011) (appellate court reviews a court's decision to provide an instruction for an abuse of discretion). The court abuses its discretion where its decision to provide an instruction is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law. *See Day,* 255 P.3d at 1067; *People v. Esparza–Treto,* 282 P.3d 471, 479–80 (Colo. App.2011). If the district court's decision to give an instruction was correct, we may affirm it on any grounds supported by the record. *See Barnett v. Elite Props. of Am., Inc.,* 252 P.3d 14, 23 (Colo.App.2010); *Rush Creek Solutions,* 107 P.3d at 406.

¶ 31 A court errs by giving an instruction that misleads or confuses the jury. *Hock v. New York Life Ins. Co.,* 876 P.2d 1242, 1258 (Colo.1994); *Harris Grp., Inc. v. Robinson,* 209 P.3d 1188, 1195 (Colo. App.2009). The court also generally errs by giving contradictory instructions. *See Steward Software Co. v. Kopcho,* 275 P.3d 702, 711 (Colo.App.2010), *rev'd on other grounds,* 266 P.3d 1085 (Colo.2011); *see also Young v. Colo. Nat'l Bank,* 148 Colo. 104, 125, 365 P.2d 701, 713 (1961); *cf. Jordan v. Bogner,* 844 P.2d 664, 667–68 (Colo.1993) (a court can give two different standard of care instructions where the parties present disputing evidence on that issue and the instructions are properly modified).

¶ 32 The court's erroneous provision of an instruction is reversible error only if the error prejudiced a party's substantial rights. *Hock,* 876 P.2d at 1258; *Harris Grp.,* 209 P.3d at 1195; *Clough v. Williams Prod. RMT Co.,* 179 P.3d 32, 40 (Colo.App.2007); *see* C.R.C.P. 61 (harmless error is not grounds for reversal; harmless error is error that "does not affect the substantial rights of the parties"). Such prejudice occurs where the jury might have returned a different verdict had the court not given the improper instruction. *Harris Grp.,* 209 P.3d at 1195;

*Clough,* 179 P.3d at 40. But "there is no prejudicial error to the defendant in giving a[n] instruction which states a rule more favorable than the defendant was entitled to have." *Jordan,* 844 P.2d at 668.

### b. Federal Substantive Law Applies

¶ 33 A FELA action adjudicated in state court is governed by state procedural law and federal substantive law. *St. Louis Sw. Ry. Co. v. Dickerson,* 470 U.S. 409, 411, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985); *see Nichols v. Burlington N. & Santa Fe Ry. Co.,* 56 P.3d 106, 108 (Colo.App.2002).[7] Thus, "the propriety of jury instructions concerning the measure of damages in [a] FELA action is an issue of 'substance' determined by federal law." *St. Louis Sw. Ry. Co.,* 470 U.S. at 411, 105 S.Ct. 1347; *accord Monessen Sw. Ry. Co. v. Morgan,* 486 U.S. 330, 335, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988); *Norfolk & W. Ry. Co. v. Liepelt,* 444 U.S. 490, 492–93, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980).

¶ 34 Though "FELA interpretation is a matter of federal law, the Act is founded on common law concepts subject to explicit statutory qualifications." *Stevens v. Bangor & Aroostook R.R. Co.,* 97 F.3d 594, 602 (1st Cir.1996). Consequently, in determining the correct measure of damages in a FELA action, it is appropriate to consider common law developments, absent conflicting statutory requirements. *Atchison, Topeka & Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 568, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987); *Stevens,* 97 F.3d at 602; *Pierce v. S. Pac. Transp. Co.,* 823 F.2d 1366, 1372 n. 2 (9th Cir.1987).

### c. The Eggshell and Aggravation Doctrines

¶ 35 The eggshell doctrine provides that a tortfeasor takes its victim as it finds him. *Cobige v. City of Chicago,* 651 F.3d 780, 782 (7th Cir.2011); *Doty v. Sewall,* 908 F.2d 1053, 1059 (1st Cir.1990); *see also Schafer v. Hoffman,* 831 P.2d 897, 900 (Colo. 1992). Thus, a tortfeasor is fully liable for any damages resulting from its wrongful act

---

7. The parties frame their arguments in terms of what is proper under FELA. They do not address the other two federal statutes on which two of

Mr. McLaughlin's claims were based. Our analysis and holdings, therefore, should be understood as relating to claims under FELA.

even if the victim had a pre-existing condition that made the consequences of the wrongful act more severe for him than they would have been for a person without the condition. *Meyers v. Wal–Mart Stores, E., Inc.,* 257 F.3d 625, 632 (6th Cir.2001); *Figueroa–Torres v. Toledo–Davila,* 232 F.3d 270, 275–76 (1st Cir.2000); *Jordan v. Atchison, Topeka & Santa Fe Ry. Co.,* 934 F.2d 225, 228–29 (9th Cir.1991); *Maurer v. United States,* 668 F.2d 98, 99–100 (2d Cir.1981) (per curiam); *see also Schafer,* 831 P.2d at 900. Put differently, the tortfeasor may not escape or reduce liability because the victim's pre-existing condition made him more susceptible of injury from the tortfeasor's conduct. *Crinkley v. Holiday Inns, Inc.,* 844 F.2d 156, 163 (4th Cir.1988) (applying North Carolina law); *Pierce,* 823 F.2d at 1372 n. 2; *see also Schafer,* 831 P.2d at 900.

¶ 36 The eggshell doctrine can apply in FELA cases involving pre-existing conditions. *See Jordan,* 934 F.2d at 228–29; *Pierce,* 823 F.2d at 1372 n. 2; *Lancaster v. Norfolk & W. Ry. Co.,* 773 F.2d 807, 822 (7th Cir.1985); *see also Stevens,* 97 F.3d at 602 n. 8 (dictum); 5 Leonard B. Sand, John S. Siffert, Walter P. Loughlin, Steven A. Reiss, Steve Allen & Jed S. Rakoff, *Modern Federal Jury Instructions* ¶ 89.04[3], at 89–63 & n. 3 (2011).

■ ¶ 37 However, a tortfeasor cannot be held liable for damages that it did not actually cause. Consequently, the aggravation doctrine provides generally that, "notwithstanding the eggshell skull rule, a 'defendant ... is liable only for the extent to which the defendant's conduct has resulted in an aggravation of the pre-existing condition, and not for the condition as it was.'" *Schaub v. VonWald,* 638 F.3d 905, 937 (8th Cir.2011) (Beam, J., dissenting) (emphasis omitted; ultimately quoting W. Page Keeton et al., *Prosser and Keeton on The Law of Torts* § 43, at 291–92 (5th ed.1984)); *see also* FJI–Civ. 7th Cir. 9.04 cmt. c (2010) ("As a general principle of tort law, a tortfeasor takes his victim as he finds him; aggravation of a preexisting condition is a separate element of damages."). The doctrine makes a tortfeasor liable for damages to the extent the tortious conduct "has increased the severity of a pre-

existing ... condition of the plaintiff." 2 Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, *The American Law of Torts* § 8.13, at 572 (2003) (emphasis omitted).

¶ 38 The two doctrines thus may appear to conflict as to the amount of damages properly awardable where a plaintiff has a preexisting condition: the eggshell doctrine suggests that all damages are awardable despite the condition, whereas the aggravation doctrine indicates that only the damages resulting from aggravation of the condition are awardable. Nonetheless, we conclude that the doctrines are not necessarily mutually exclusive. Rather, instructions on both doctrines may be appropriate in certain circumstances, depending on whether there is evidence that the pre-existing condition was symptomatic before the incident giving rise to the plaintiff's claim.

¶ 39 The Restatement (Third) of Torts explains that "[w]hen a person has a preexisting condition or injury *that has already caused or is causing harm of some degree,* the actor is only liable for any enhancement of the harm caused by the tortious conduct." *Id.* § 31 cmt. c (2010) (emphasis added) (addressing factual cause). An illustration to this section provides:

> Gino, who worked as a concessionaire at a sports stadium, negligently collided with Maddy, a fan attending the game, and knocked her to the ground. Maddy had an asymptomatic herniated disc that resulted in her suffering serious back injury and pain as a result of Gino's negligence. All of Maddy's harm is within Gino's scope of liability for his negligence, as a matter of law.

*Id.* cmt. b, illus. 1; *see also id.* cmt. b, illus. 4. However, under the same facts of this illustration

> except that at the time Gino collided with Maddy, she had a mild level of chronic back pain [and] [a]fter the accident with Gino, Maddy suffered severe back pain[,] Gino is subject to liability for the enhanced injury to Maddy; he is not liable for the pain from which Maddy was suffering at the time of the accident.

*Id.* cmt. c, illus. 5. Consequently, according to the Restatement, a defendant is liable for all damages caused by its negligence where the plaintiff had an asymptomatic pre-existing condition: the aggravation doctrine does not apply in that circumstance. The aggravation doctrine does apply where the plaintiff had a symptomatic pre-existing condition that had already caused pain or disability.

¶ 40 A number of federal cases have also suggested that although apportionment of damages is appropriate where the plaintiff had a previously symptomatic condition, a plaintiff's damages cannot be reduced due to an asymptomatic pre-existing condition. *See Maurer,* 668 F.2d at 100 (a plaintiff is still entitled to the full amount of damages where he had a pre-existing osteoarthritic condition or weakness caused by a previous injury that has stabilized at a nondisabling level; however, a defendant is only liable for aggravation of an injury where the plaintiff was incapacitated or disabled before the tortious conduct (citing in part *Buchalski v. Universal Marine Corp.,* 393 F.Supp. 246, 248 (W.D.Wash. 1975) (pre-existing condition was expected to remain dormant but for the later injury))); *Gresham v. Petro Stopping Ctrs., LP,* 2011 WL 1748569, *4 (D.Nev.2011) (citing Restatement (Second) of Torts § 461, illus. 2 (1965), for the proposition that a defendant can be liable for the full extent of injuries even if the plaintiff's latent infection exacerbated the injuries); *Johnson v. Cenac Towing, Inc.,* 599 F.Supp.2d 721, 730 (E.D.La.2009) (a jury may award damages for activation of a pre-existing latent condition); *D'Ambra v. United States,* 396 F.Supp. 1180, 1185 (D.R.I. 1973) ("[W]hen a prior condition does not cause pain or disability, the injury caused by the tortfeasor is the proximate cause of the

pain or disability."), *aff'd,* 518 F.2d 275 (1st Cir.1975); *see also Evans v. United Arab Shipping Co. (S.A.G.),* 790 F.Supp. 516, 519 (D.N.J.1992) (aggravation damages are for "the *increased and augmented suffering and disability* which was the proximate result of [the] defendant's act" (emphasis added) (quoting *Scarberry v. Ohio River Co.,* 217 F.Supp. 189, 193 (S.D.W.Va.1963))), *aff'd,* 4 F.3d 207 (3d Cir.1993).[8]

¶ 41 This is not to say, however, that giving instructions on both doctrines is necessarily improper where the pre-existing condition was symptomatic.

¶ 42 In *Waits v. United Fire & Casualty Co.,* 572 N.W.2d 565 (Iowa 1997), the Supreme Court of Iowa considered whether the trial court erred by providing both eggshell and aggravation instructions. *Id.* at 576. The court began by determining the circumstances in which a trial court may properly give each instruction. Regarding the aggravation instruction, it reasoned that

> a defendant is liable only for injuries caused by the defendant's fault, and not for pain or disability resulting from other causes.... Thus, if a plaintiff had a prior back injury that caused pain and a ten percent disability *before* the injury inflicted by the defendant occurred, the defendant would not be responsible for the disability and pain that predated the current injury, but only for any *additional* pain and disability caused by the current injury. Under these circumstances, an aggravation instruction is appropriately submitted to the jury.

*Id.* at 577 (internal citation omitted) (emphases in original). Conversely, "when the pain or disability arguably caused by another con-

---

**8.** This conclusion has also been reached by a number of state courts. *See, e.g., Tuite v. Stop & Shop Cos., Inc.,* 45 Conn.App. 305, 696 A.2d 363, 367 (1997) ("A plaintiff who has a dormant, asymptomatic arthritic condition that is subsequently aggravated by an injury caused by the defendant's negligence is entitled to recover full compensation for the resulting disability, even though her resulting disability is greater than if she had not suffered from the arthritic condition."); *Montalvo v. Lapez,* 77 Hawai'i 282, 884 P.2d 345, 360–63 (1994) (the defendant could be held liable for all damages caused by the incident if the plaintiff had a dormant or latent preexist-

ing condition or had fully recovered from the pre-existing condition before the incident; however, the jury should apportion damages if the condition was not dormant, latent, or fully resolved); *Lalim v. Debrobander,* 2003 WL 23811601, *4 (Minn.Dist.Ct. No. C8–01–9961, Feb. 17, 2003) (unpublished post-trial order) (the distinction between the eggshell and aggravation doctrines is the distinction between asymptomatic and symptomatic pre-existing conditions); *Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 866 (Mo.1993) (if the negligence activated a latent disease, the defendant is liable for all resulting harm caused by the negligence).

dition arises *after* the injury caused by the defendant's fault has lighted up or exacerbated the prior condition," an eggshell instruction is appropriate because

> "[the] mere existence of a prior nondisabling, asymptomatic, latent condition is not a defense. A tortfeasor whose act, superimposed upon such a condition, results in an injury may be liable in damages for the full disability. In these cases the injury, and not the dormant condition, is deemed to be the proximate cause of the pain and disability."

*Id.* (quoting *Becker v. D & E Distrib. Co.,* 247 N.W.2d 727, 731 (Iowa 1976)) (emphasis in original).

¶ 43 The court then indicated that both instructions could properly be given in two scenarios. First, either instruction could apply because there is evidence that the pre-existing condition was dormant, nondisabling, and asymptomatic (making an eggshell instruction appropriate); and there is conflicting evidence that the pre-existing condition had already caused symptoms or disability (making an aggravation instruction appropriate). *Waits,* 572 N.W.2d at 576–77; *see also Sleeth v. Louvar,* 659 N.W.2d 210, 213 (Iowa 2003). Second, both instructions could apply because there is a factual basis for the jury to believe that "the prior condition has caused some disability or pain that is aggravated by the second injury and at the same time the additional harm resulting from the second injury is greater than it would have been in the absence of the prior injury." *Waits,* 572 N.W.2d at 578; *see also id.* at 577; *Rowe v. Munye,* 702 N.W.2d 729, 741 (Minn. 2005).[9]

■ ¶ 44 We are persuaded by the *Waits* court's reasoning. Therefore, we conclude that giving an eggshell instruction is appropriate where there is evidence that the plaintiff had a dormant or asymptomatic pre-existing condition. Giving an eggshell in-

struction is also appropriate where a pre-existing condition was symptomatic, if there is evidence that the harm resulting from the defendant's negligence is greater than it would have been in the absence of the pre-existing condition. Giving an aggravation instruction is not appropriate where the pre-existing condition was asymptomatic, but is appropriate where there is evidence that the plaintiff had previously suffered pain or symptoms from the condition, and the condition allegedly was aggravated by the incident. Depending on the evidence presented, one or both instructions may be appropriate. If both are given, an instruction clarifying for the jury how both should be applied should also be given.

¶ 45 Relying on *Sauer v. Burlington Northern Railroad Co.,* 106 F.3d 1490 (10th Cir.1996), the railroad nonetheless argues that whenever giving an aggravation instruction is appropriate, giving an eggshell instruction is necessarily inappropriate. We are not persuaded.

¶ 46 In *Sauer,* the Tenth Circuit considered only whether there was sufficient evidence to warrant an aggravation instruction. The court did not consider whether an eggshell instruction also would have been appropriate. Therefore, it does not support the railroad's position.

### 3. Application

■ ¶ 47 Here, as noted, the district court gave both eggshell and aggravation instructions. The railroad contends that the court erred by providing the eggshell instruction because it was not arguing that Mr. McLaughlin should not be compensated due to his "frailty," but rather that the jury should apportion damages based on his pre-existing conditions. An eggshell instruction may be appropriate, however, where the defendant attempts either to eliminate or *to*

---

9. The *Waits* court also recognized that eggshell and aggravation instructions can appear conflicting and confusing when read together. Therefore, where a court properly gives both instructions, the court also should give the jury additional guidance on how to apply the instructions. *Waits,* 572 N.W.2d at 576, 578 (the trial court "erred . . . in failing to explain to the jury

how it was to decide which instruction was applicable under the facts of this case"); *accord Rowe,* 702 N.W.2d at 741–42; *see also* CJI–Civ. 4th 6:8 note 5 (2011) (where a court gives eggshell and aggravation instructions, "an additional clarifying instruction or modification of [the instructions] may be necessary").

*reduce* its liability based on the plaintiff's preexisting condition. *See Schafer,* 831 P.2d at 900; *see generally* CJI–Civ. 4th 6:7, note 1 (2011). Moreover, based on our analysis above, we conclude that the instruction was appropriate here because (1) there was no evidence that Mr. McLaughlin had suffered any pain or symptoms from his back conditions or hernia before the handbrake incident; and (2) there was evidence that his pre-existing conditions were made symptomatic or exacerbated by the incident.[10]

¶ 48 In contrast, the evidence did not support giving the aggravation instruction. In *Waits,* the court concluded that an aggravation instruction was proper where the plaintiff had previously suffered a herniated disc that was resolved before the incident at issue, but which the incident reinjured. *Waits,* 572 N.W.2d at 576–77. It did so in part because the previous injury made the plaintiff more susceptible to reinjury. *Id.* at 576. Here, however, there was no evidence that the handbrake incident reinjured a previous injury.[11] Nor, as noted, was there evidence that Mr. McLaughlin experienced symptoms before the incident that were aggravated, such that apportionment would have been appropriate.[12]

¶ 49 Consequently, we conclude that the district court did not abuse its discretion by finding that the evidence supported giving the eggshell instruction, but did abuse its discretion by finding that the evidence of pre-existing degenerative disc disease warranted the aggravation instruction. It follows that the court did not abuse its discretion by rejecting the railroad's tendered special verdict form (allowing the jury to apportion damages attributable to pre-exist-

ing conditions by percentage), but did abuse its discretion by providing a modified verdict form telling the jury not to include "any amount you find to be capable of apportionment to any pre-existing condition of the Plaintiff."

¶ 50 However, the railroad does not argue that giving the aggravation instruction or modified verdict form was error. And, in any event, the errors were harmless because they did not affect the railroad's substantial rights. Giving the aggravation instruction and modified verdict form inured to the railroad's benefit because they told the jury to reduce the amount of damages based on Mr. McLaughlin's pre-existing conditions, thereby allowing the jury to reach a result that the evidence and the law did not warrant. *See Jordan,* 844 P.2d at 668 (where an improperly given instruction states a rule more favorable than the defendant was entitled to have, there is no prejudicial error).

## C. Mr. McLaughlin's Receipt of RRA Disability Benefits

### 1. Motion in Limine

¶ 51 Before trial, the railroad moved to preclude Mr. McLaughlin's wage loss claim because he had received disability benefits under the RRA or, alternatively, to deduct the amount of those benefits from any judgment Mr. McLaughlin might receive. The railroad conceded that because federal courts consider RRA disability benefits a collateral source of recovery, evidence thereof was not admissible at trial. However, it argued that this rule does not preclude a court from barring outright a wage loss claim or reducing a FELA judgment by the amount of disability payments.

10. Though one of Mr. McLaughlin's doctors testified that Mr. McLaughlin may have had "an occasional backache or something like that," he characterized this as "the sort of typical things that most people have," and therefore concluded that he could not apportion any pain or disability that Mr. McLaughlin was experiencing at the time of trial to the pre-existing degenerative disc disease.

11. Mr. McLaughlin's only previous symptomatic condition was osteomyelitis. However, Mr. McLaughlin did not suffer osteomyelitis again after the handbrake incident. And the doctor

who testified for the railroad said that "this osteomyelitis issue ... had nothing to do with the hernia."

12. To the extent *Sauer* suggests that an aggravation instruction is appropriate where there is an asymptomatic pre-existing condition, we conclude that any such suggestion is dicta. Moreover, we are not bound by the Tenth Circuit's rulings on federal law. *See People v. Barber,* 799 P.2d 936, 940 (Colo.1990); *see also Reigel v. SavaSeniorCare L.L.C.,* 292 P.3d 977, 986–87 (Colo.App.2011).

¶ 52 The district court denied the motion because "[t]he weight of authority is clear that [RRA] payments, such as those received by Plaintiff, are collateral source benefits and may not be offset against a FELA award."

### 2. Analysis

¶ 53 The district court ruled as a matter of law that RRA disability payments are a collateral source of recovery that cannot be offset against a FELA award. We review such a legal conclusion de novo. *See Sunahara v. State Farm Mut. Auto. Ins. Co.,* 2012 CO 30, ¶¶ 12, 16; *E–470 Pub. Highway Auth. v. 455 Co.,* 3 P.3d 18, 22–23 (Colo.2000). Because the issue concerns the measure of damages on a FELA claim, it is governed by federal law. *St. Louis Sw. Ry. Co.,* 470 U.S. at 411, 105 S.Ct. 1347.

¶ 54 "The collateral source rule allows a plaintiff to seek full recovery from a tortfeasor even though an independent source has compensated the plaintiff in full or in part for the loss." *Green v. Denver & Rio Grande W. R.R. Co.,* 59 F.3d 1029, 1032 (10th Cir.1995). The rule has two components: (1) a substantive component prohibiting reduction of a plaintiff's damages award based on his receipt of collateral source compensation; and (2) an evidentiary component precluding the admission of evidence about the plaintiff's receipt of collateral source compensation. *See Sloas v. CSX Transp., Inc.,* 616 F.3d 380, 387 n. 3 (4th Cir.2010); *Davis v. Odeco, Inc.,* 18 F.3d 1237, 1243 (5th Cir.1994); *cf. Wal–Mart Stores, Inc. v. Crossgrove,* 2012 CO 31, ¶¶ 9, 11–12, 276 P.3d 562 (Colorado's collateral source rule has (1) a post-verdict component preventing reduction of a plaintiff's damages based on his receipt of a collateral source benefit, and (2) a pre-verdict component barring admission of evidence of collateral source benefits).

¶ 55 In *Eichel v. New York Central Railroad Co.,* 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963), the Supreme Court held that the collateral source rule prohibited the admission of evidence about a plaintiff's RRA disability benefits in a FELA action to show the extent and duration of the plaintiff's disability. *Id.* at 254–56, 84 S.Ct. 316. The Court reasoned:

"The Railroad Retirement Act is substantially a Social Security Act for employees of common carriers. * * * The benefits received under such a system of social legislation are not directly attributable to the contributions of the employer, so they cannot be considered in mitigation of the damages caused by the employer."

*Id.* at 254, 84 S.Ct. 316 (quoting *New York, New Haven & Hartford R.R. Co. v. Leary,* 204 F.2d 461, 468 (1st Cir.1953)).

¶ 56 The railroad concedes that *Eichel*'s reasoning applies where a defendant seeks to introduce evidence of RRA disability benefits at trial. But it argues that such benefits may be offset against a FELA award. As noted, however, the collateral source rule has both substantive and evidentiary components. Thus, the Court's conclusion in *Eichel* that RRA disability benefits are regarded as a collateral source of recovery in a FELA action is dispositive: a court may not reduce a plaintiff's damages under FELA based on his receipt of collateral disability benefits under the RRA. *See Sloas,* 616 F.3d at 387 n. 3, 392 (rejecting the defendant's contention that "*Eichel* was merely an evidentiary decision that did not address the appropriateness of the offset of a FELA award based on the receipt of RRA benefits"; RRA benefits "are a collateral source that may not be considered in determining a FELA award"); *see also Whatley v. Skaggs Cos., Inc.,* 707 F.2d 1129, 1138 (10th Cir.1983) (the district court was not required to offset the plaintiff's disability benefits against the award because the benefits were from a collateral source); Restatement (Second) of Torts § 920A cmt. b (collateral source benefits "do not have the effect of reducing the recovery against the defendant").

¶ 57 The railroad nonetheless contends that the disability benefits are not a collateral source of recovery because the railroad contributed to those benefits. We note that the railroad conceded in the district court that disability benefits are a collateral source of recovery, specifically on the second page of its motion in limine. Therefore, the railroad arguably waived this contention. In

any event, we conclude that the railroad is incorrect.

¶ 58 In *Eichel*, the Court held that RRA disability benefits are a collateral source of recovery in part because they are not directly attributable to the employer. 375 U.S. at 254, 84 S.Ct. 316. The Fourth Circuit Court of Appeals has similarly concluded that disability benefits paid under the current version of the RRA remain a collateral source of recovery. *Sloas*, 616 F.3d at 387–92 (a benefit is not collateral if the tortfeasor provides it to the plaintiff specifically to compensate him for his injury; however, an employer does not voluntarily contribute under the RRA to indemnify itself against possible FELA liability, but rather is required to make those contributions to further a federally funded and administered social welfare program). We agree with that view.

¶ 59 Finally, the railroad asserts that the disability payments should not be regarded as a collateral source of recovery because doing so permits Mr. McLaughlin a double recovery. But under the collateral source rule, " '[t]he plaintiff may receive benefits from the defendant himself which, because of their nature, are not considered double compensation for the same injury but [are] deemed collateral.' " *Id.* at 390 (quoting *United States v. Price*, 288 F.2d 448, 450 (4th Cir.1961)); *accord Friedland v. TIC–The Indus. Co.*, 566 F.3d 1203, 1206 (10th Cir.2009); *Clausen v. Sea–3, Inc.*, 21 F.3d 1181, 1192 (1st Cir.1994). This is so because "public policy favors giving the plaintiff a double recovery rather than allowing a wrongdoer to enjoy reduced liability simply because the plaintiff received compensation from an independent source." *Green*, 59 F.3d at 1032.

¶ 60 Therefore, we conclude that the district court did not err by ruling that Mr. McLaughlin's RRA disability payments were a collateral source of recovery that could not bar Mr. McLaughlin's pursuit of damages for lost wages or be offset against the FELA award.

### III. Appellate Attorney Fees

¶ 61 Mr. McLaughlin requests an award of the attorney fees he has incurred on appeal in defending the disability benefits issue, contending that the railroad's arguments are frivolous under C.A.R. 38(d) and section 13–17–102, C.R.S.2011. The railroad responds that the request for appellate attorney fees is itself frivolous, and therefore requests an award of the attorney fees it has incurred on appeal.

¶ 62 We recognize that the railroad's general arguments concerning the disability benefits were addressed and rejected in another case involving the railroad, *Campbell v. BNSF Railway Co.*, 2011 WL 794392 (D.N.D.2011). However, there are few other cases considering the specific issue of whether RRA disability payments are a collateral source of recovery that may not be offset against damages in a FELA action, and those cases are relatively recent. Therefore, we conclude that the district court's judgment was not so plainly correct and the legal authority not so clearly against the railroad's position that its appeal of the issue was frivolous. *See Martin v. Essrig*, 277 P.3d 857, 862–63 (Colo.App.2011); *Patterson Recall Comm., Inc. v. Patterson*, 209 P.3d 1210, 1220 (Colo.App.2009). Nor do we view Mr. McLaughlin's request as frivolous. Accordingly, we deny both requests.

¶ 63 The judgment is affirmed.

Judge TAUBMAN and Judge RUSSEL concur.