2012 COA 218

**Carolyn K. HARNER, Plaintiff–Appellant,**

v.

**James B. CHAPMAN, M.D., Defendant–Appellee.**

No. 11CA2401.

Colorado Court of Appeals, Div. VI.

Dec. 27, 2012.

Hutchinson Black and Cook, LLC, Baine P. Kerr, Keith M. Edwards, Boulder, Colorado, for Plaintiff–Appellant.

Jaudon & Avery LLP, David H. Yun, Jared R. Ellis, Denver, Colorado, for Defendant–Appellee.

Leventhal, Brown & Puga, P.C., Lorraine E. Parker, David P. Mason, Denver, Colorado, for Amicus Curiae Colorado Trial Lawyers Association.

Fennemore Craig, P.C., Troy R. Rackham, Denver, Colorado, for Amicus Curiae Colorado Defense Lawyers Association.

Opinion by Judge GABRIEL.

¶ 1 Plaintiff, Carolyn K. Harner, appeals the judgment entered in favor of defendant, Dr. James B. Chapman, and the denial of her motion for post-trial relief.

¶ 2 We first conclude that Harner failed properly to raise on appeal her apparent contention that the evidence was insufficient to establish that Chapman was not negligent. Accordingly, we decline to address that issue.

¶ 3 Next, we conclude that (1) the trial court erred in refusing to instruct the jury, pursuant to still binding Colorado Supreme Court precedent, that the res ipsa loquitur doctrine shifts to the defendant the burden of proving by a preponderance of the evidence that he was not negligent, and (2) this error was not harmless. As more fully set forth herein, however, we respectfully urge the supreme court to take the opportunity to address the relationship, and resolve the potential inconsistency, between CRE 301 and the court's long-standing precedent that the

res ipsa loquitur doctrine shifts the burden of proof to the defendant.

¶ 4 Finally, we conclude that Harner suffered no cumulative prejudice from alleged evidentiary irregularities or the exclusion of evidence and argument related to those alleged irregularities, and we decline to consider Harner's argument regarding the informed consent and assumption of the risk instructions.

¶ 5 Accordingly, we reverse and remand for a new trial.

## I. Background

¶ 6 This medical malpractice case arises out of the death of Harner's husband, who died several hours after undergoing an angiogram performed by Chapman, a cardiologist. Harner sued Chapman, arguing that he negligently punctured the wall of her husband's aorta at the aortic arch, causing internal bleeding that resulted in her husband's death. Chapman denied that he was negligent, that he perforated the aortic arch, or that he otherwise caused Harner's husband's death.

¶ 7 Prior to and during trial, Harner raised a number of what she deems evidentiary "irregularities." As pertinent here, she asserted that

- the so-called cine, or permanently recorded real-time image of the angiogram, was missing the portion of the procedure during which an injury to the aortic arch could have occurred;
- the procedure log, a written documentation of the angiogram, contained numerous entries that were either incorrect, impossible, or altered;
- aortic tissue removed and preserved during her husband's autopsy had been destroyed by the coroner's office, evincing possible misconduct;
- x rays contained in her husband's autopsy file and utilized by defense counsel during a cross-examination were actually those of another decedent, and one of Chapman's attorneys had visited the coroner's office on the day these x rays were incorrectly placed in the file;

- autopsy photographs that Chapman presented at trial were of low visual quality and improperly suggested physical conditions that supported Chapman's theory of the case.

¶ 8 Notwithstanding the foregoing suggestions of misconduct on the part of Chapman, defense counsel, and those working with them, Harner ultimately stipulated or otherwise agreed that (1) there was no evidence that Chapman either intentionally failed to film the relevant part of the angiogram or tampered with or deleted it; (2) she would not present evidence or argument that the destruction of the aortic tissue resulted from misconduct by Chapman, his counsel, his expert witness, or anyone else connected with him; and (3) the third person's x rays were placed in the autopsy file through no fault of the parties, their counsel, or various specifically named witnesses and therefore would be withdrawn. Moreover, during trial, Harner introduced evidence of the procedure log's numerous errors and discrepancies, as well as of the implications of Chapman's use of poor quality autopsy photos.

¶ 9 As also pertinent here, Harner requested that the court instruct the jury that the res ipsa loquitur doctrine shifted to Chapman the burden of proving by a preponderance of the evidence that he was not negligent. Although the court agreed to instruct on res ipsa loquitur, it ruled that the doctrine did not shift the burden of proof to Chapman. Rather, the court held that, pursuant to CRE 301, the doctrine created an evidentiary presumption of negligence that merely shifted to Chapman the burden of coming forward with evidence to rebut the presumption. Accordingly, the court instructed the jury, in pertinent part, that the jurors "must consider [the res ipsa loquitur] presumption together with all the other evidence in the case in determining whether or not the defendant was negligent."

¶ 10 The jury ultimately found that Chapman was not negligent. Thereafter, Harner filed a motion for a new trial or judgment notwithstanding the verdict. In this motion, Harner argued, as pertinent here, that the evidence was insufficient to support the jury's determination that Chapman was not

negligent. In addition, she asserted that the court erred in (1) not instructing the jury that the res ipsa loquitur doctrine shifted the burden of proof, and (2) restricting her from arguing that Chapman, his counsel, or others associated with them falsified, fabricated, altered, and destroyed evidence in this case. The court denied this motion, and Harner now appeals.

## II. Sufficiency of the Evidence

¶ 11 Because it was not properly presented in her appellate briefs, we decline to consider Harner's assertion at oral argument that the evidence was insufficient to support a finding that Chapman was not negligent. *See Barnett v. Elite Props. of Am., Inc.,* 252 P.3d 14, 19 (Colo.App.2010) ("We will not consider a bald legal proposition presented without argument or development."); *Castillo v. Koppes–Conway,* 148 P.3d 289, 291–92 (Colo.App.2006) (declining to address an argument presented without legal authority supporting the contentions of error).

## III. Res Ipsa Loquitur Instruction

¶ 12 Harner principally argues that the trial court erred in failing to instruct the jury that the res ipsa loquitur doctrine shifted to Chapman the burden of proving by a preponderance of the evidence that he was not negligent. We agree.

¶ 13 We review a trial court's decision to give a particular jury instruction for an abuse of discretion. *Day v. Johnson,* 255 P.3d 1064, 1067 (Colo.2011). We, however, review de novo whether a particular instruction correctly stated the law. *Id.*

¶ 14 Similarly, whether the res ipsa loquitur doctrine applies in a given case is a question of law for the trial court. *Kendrick v. Pippin,* 252 P.3d 1052, 1061 (Colo.2011). To demonstrate that the doctrine applies, a plaintiff must introduce evidence showing that (1) the event at issue is of the kind that ordinarily does not occur absent negligence; (2) responsible causes other than the defendant's negligence are sufficiently eliminated; and (3) the presumed negligence is within the scope of the defendant's duty to the plaintiff. *Id.*

¶ 15 Here, the trial court concluded that the res ipsa loquitur doctrine applied. The question thus became what effect the doctrine should have.

¶ 16 In *Weiss v. Axler,* 137 Colo. 544, 551, 328 P.2d 88, 92 (1958), our supreme court unequivocally stated, "Once the presumption of negligence arises the burden shifts to the defendant to overcome the presumption, and to establish affirmatively that no negligence existed on his part." After then noting that contrary or inconsistent views, including the view that the presumption merely shifted the burden of going forward with evidence, appeared in other cases, *id.* at 551–56, 328 P.2d at 93–95, the court held:

> The doctrine of res ipsa loquitur creates a compulsive presumption of negligence which continues to exist until the defendant has satisfied the court or jury, whichever is to find the fact, by a preponderance of the evidence that he was not negligent. If he has thus satisfied the trier of the facts, he has destroyed the presumption. Thus, the sole question in a res ipsa loquitur case is: has the defendant overcome the prima facie case of negligence against him by establishing by evidence satisfactory to the jury that he was not negligent?

*Id.* at 559, 328 P.2d at 97.

¶ 17 Here, the trial court suggested, as Chapman argues on appeal, that *Weiss* was effectively superseded by the 1979 adoption of CRE 301, which provides, in pertinent part:

> [A] presumption imposes upon the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast.

¶ 18 Thus, the trial court held that the res ipsa loquitur doctrine merely shifted to Chapman the burden of going forward to rebut the presumption of negligence created by application of the doctrine, and that the ultimate burden of proof remained with Harner.

¶ 19 We acknowledge the force of Chapman's argument, and that of amicus, Colorado Defense Lawyer's Association. Nonetheless, we are aware of no case, and Chapman has cited none, in which our supreme court has either overruled *Weiss*, rejected its burden-shifting approach, or expressly indicated that *Weiss* is no longer good law. *Cf. Haralampopoulos v. Kelly*, —— P.3d ——, —— (Colo.App.2011) (*cert. granted* Sept. 24, 2012) (noting that the adoption of the Colorado Rules of Evidence did not affect the continued viability of a case that was decided before the Rules were adopted, where the supreme court had never overruled the earlier case). To the contrary, in *Stone's Farm Supply, Inc. v. Deacon*, 805 P.2d 1109, 1114 n. 10 (Colo.1991), decided twelve years after CRE 301 was adopted, the court cited *Weiss* with approval (whether in dicta or not), stating, "*Res ipsa loquitur* allows an inference of breach of duty and causation, and requires the defendant to prove by a preponderance of the evidence that he was not negligent." *See also Kendrick*, 252 P.3d at 1069 (Martinez, J., concurring) ("It is important to note that an instruction on res ipsa loquitur is not an immutable guarantee that a person will be found negligent. It is merely a presumption that shifts the burden to the defendant to prove that he or she was not negligent.").

¶ 20 Although we might have decided the question of the effect of the res ipsa loquitur doctrine differently were we writing on a blank slate, we are not writing on such a slate. Rather, we are bound to follow the decisions of our supreme court, and in light of the foregoing, we cannot conclude that CRE 301 necessarily superseded *Weiss* and its progeny. *See Silver v. Colo. Cas. Ins. Co.*, 219 P.3d 324, 330 (Colo.App.2009) (noting that a division of the Colorado Court of Appeals is not at liberty to disregard a rule announced in a prior supreme court case absent "some clear indication" that the supreme court had overruled its prior case). Thus, we agree with the division's statement in *Ochoa v. Vered*, 212 P.3d 963, 970 (Colo. App.2009), that any tension between *Stone's Farm* and CRE 301 must be resolved by our supreme court, and we respectfully urge that court to take up that issue in this case.

¶ 21 We are not persuaded otherwise by *People v. Ramirez*, 155 P.3d 371, 378 (Colo. 2007); *Montgomery Elevator Co. v. Gordon*, 619 P.2d 66, 68–69 & n. 3 (Colo.1980); or *Hartford Fire Insurance Co. v. Public Service Co.*, 676 P.2d 25, 29–30 (Colo.App.1983), on which Chapman relies.

¶ 22 In *Ramirez*, 155 P.3d at 378, the supreme court did not hold that any and all common law standards that arguably conflict with the Colorado Rules of Evidence were abrogated by the adoption of those Rules. Rather, the analysis in the case appears to have been limited to the continued viability of common law rules concerning the admissibility of expert medical testimony that preceded the adoption of the evidence rules. *See id.* We are not persuaded that the same analysis applies here, where the issue presented principally concerns the applicable burdens of proof and production.

¶ 23 In *Montgomery Elevator*, 619 P.2d at 68–69 & n. 3, although the court, in discussing the res ipsa loquitur presumption, cited CRE 301, followed by a citation that read, "*contra*, *Weiss v. Axler*, 137 Colo. 544, 328 P.2d 88 (1958)," the court did not directly address the issue of burden-shifting. Indeed, any discussion of burden-shifting in that case would have been dicta, because the court's analysis and holding related to whether the elements of res ipsa loquitur were satisfied. *See id.* at 69–70. In any event, we cannot conclude from the above-cited footnote alone that the supreme court was somehow signaling that *Weiss* was no longer good law. *See Silver*, 219 P.3d at 330 (requiring a "clear indication" that the supreme court had overruled a prior case). To the contrary, the language that the supreme court used in *Montgomery Elevator* suggested, at best, that there is a potential conflict between CRE 301 and *Weiss*.

¶ 24 *Hartford Fire Insurance* was a decision by a division of this court and, of course, cannot be read to have overruled or superseded the supreme court's decision in *Weiss*. In any event, in our view, Chapman overstates the holding in *Hartford Fire Insurance*. In that case, a division of this court merely held that the res ipsa loquitur instruction should have conformed to the then-

existing version of the pertinent Colorado pattern jury instruction. *See Hartford Fire Insurance,* 676 P.2d at 30. In the current version of the same pattern instruction, however, the civil jury instructions committee (1) notes that, despite the committee's prior view, there is now uncertainty as to whether the holding in *Weiss* survived the adoption of CRE 301, and (2) takes no position on whether the supreme court's statements in *Stone's Farm* regarding *Weiss* were intended to except the res ipsa loquitur doctrine from the operation of CRE 301, or whether those statements were only dicta and CRE 301 governs the doctrine. *See* CJI–Civ. 4th 9:17 notes on use 2–3 (2009). Thus, the current pattern instructions advise parties how to proceed under both possible interpretations. *See id.* note on use 3.

¶ 25 Accordingly, we conclude that the trial court erred in refusing to instruct the jury that the res ipsa loquitur doctrine shifts the burden of proof to the defendant. The question thus becomes whether that error was harmless. *Waneka v. Clyncke,* 134 P.3d 492, 494 (Colo.App.2005) (noting that an appellate court reviews a properly preserved objection to a jury instruction for harmless error), *aff'd,* 157 P.3d 1072 (Colo.2007). Under this standard, reversal is required only if the error prejudiced a party's substantial rights. *McLaughlin v. BNSF Ry. Co.,* 2012 COA 92, ¶ 32, 300 P.3d 925. Such prejudice occurs when the jury might have returned a different verdict had the court not given the improper instruction. *Id.* For two reasons, we cannot say that the error was harmless here.

¶ 26 First, the proper allocation of the burden of proof is a substantial right of the parties, and as various divisions of this court have held, it is reversible error if that burden is allocated improperly. *See Butkovich v. Indus. Comm'n,* 690 P.2d 257, 259 (Colo.App. 1984); *Atl. & Pac. Ins. Co. v. Barnes,* 666 P.2d 163, 165 (Colo.App.1983).

¶ 27 Second, the jury's verdict here reflects the jury's determination that Harner had failed to prove, by a preponderance of the evidence, that Chapman was negligent. The record shows, however, that the evidence in this case was conflicting and hotly contested. Accordingly, the question of who had the ultimate burden of proof may well have been dispositive. Thus, we cannot say that the trial court's failure to assign that burden to Chapman was harmless.

¶ 28 We are not persuaded otherwise by Chapman's argument that any error here was harmless because the res ipsa loquitur doctrine does not apply. *See Blocker Exploration Co. v. Frontier Exploration, Inc.,* 740 P.2d 983, 989 (Colo.1987) (noting that an appellee may, without filing a cross-appeal, raise arguments in support of the trial court's judgment that would not increase his or her rights under the judgment). Specifically, Chapman contends that the res ipsa loquitur doctrine is inapplicable because Harner introduced (1) expert testimony to explain her claim, and (2) evidence related to the alleged cause of the injury at issue. We reject both of these arguments in turn.

¶ 29 As to Chapman's first argument, we are not persuaded that *Williams v. Boyle,* 72 P.3d 392, 398 (Colo.App.2003), which addressed whether a certificate of review was required, contravenes the long-established rule that expert testimony may be used to establish the elements of res ipsa loquitur. *See, e.g., Holmes v. Gamble,* 624 P.2d 905, 907 (Colo.App.1980) ("[H]ere, it cannot be inferred from the injury itself that it could not have occurred without negligence on the part of the defendants; thus, expert testimony on that issue is necessary before the doctrine of res ipsa loquitur can be applied."), *aff'd,* 655 P.2d 405 (Colo.1982).

¶ 30 As to Chapman's second argument, as the division stated in *Hartford Fire Insurance,* 676 P.2d at 27, "[A]n attempt to prove allegations of specific negligence does not negate the applicability of *res ipsa loquitur* so long as the evidence of specific negligence does not conclusively establish the facts surrounding the accident."

¶ 31 Nor are we persuaded by Chapman's argument that any error regarding the res ipsa loquitur instruction was harmless because other instructions assigned to Harner the burden of proving her claim by a preponderance of the evidence and these instructions would have controlled over a cor-

rect res ipsa loquitur instruction. Chapman cites no law in support of this proposition, and we are aware of none. Moreover, had the jury been properly instructed, it would have been advised that Harner bore the burden of proof, but that if the elements of the res ipsa loquitur doctrine applied, then the burden would have shifted to Chapman. We see nothing inconsistent in such instructions.

¶ 32 For these reasons, we reverse the judgment and remand for a new trial in which, if the same evidence is presented, the court must give a res ipsa loquitur instruction in accordance with the principles set forth in this opinion.

¶ 33 In light of this determination, we need not address Harner's alternative contention that the trial court abused its discretion in omitting from the res ipsa loquitur instruction the phrase "and you must find," which is parenthesized in the introductory first paragraph of CJI–Civ. 4th 9:17. Nor do we address Harner's contention that the trial court abused its discretion in instructing the jury on issues of informed consent and assumption of the risk, because we cannot say that this issue will necessarily arise again on remand.

### IV. Alleged Evidentiary "Irregularities"

 ¶ 34 Because it is likely to arise again on remand, we address and reject Harner's contention that the cumulative prejudice she suffered from the alleged evidentiary "irregularities" and instructions exonerating Chapman and his counsel warrants reversal.

¶ 35 As noted above, as to the cine, aortic tissue, and misplaced x rays, Harner stipulated or otherwise agreed that neither Chapman, his counsel, nor anyone associated with the defense was responsible for the alleged "irregularities." Accordingly, as to these issues, we perceive no material misconduct by anyone associated with Chapman, nor do we perceive any prejudice to Harner. *See Maloney v. Brassfield,* 251 P.3d 1097, 1108 (Colo.App.2010) (noting that stipulations are

a form of judicial admission and are binding on the party who makes them).

¶ 36 We are not persuaded otherwise by Harner's assertion that the only reason she offered to stipulate was to mitigate the effect of the court's erroneous in limine ruling, which precluded her from even mentioning the missing cine. Harner cites nothing in the record that supports such a contention. Moreover, this assertion does not establish duress or alter the undisputed fact that Harner entered into the stipulations.

■ ¶ 37 Similarly, with respect to the procedure log and autopsy photographs, Harner has failed to demonstrate what alleged "irregularities" she was precluded from introducing into evidence. Indeed, as noted above, she introduced such evidence. Nor does Harner make any substantive argument to support her conclusory assertion that these "irregularities" contributed to cumulative prejudice. Accordingly, we will not consider her assertions as to these issues. *See Barnett,* 252 P.3d at 19; *Castillo,* 148 P.3d at 291–92.

### V. Conclusion and Remand Order

¶ 38 For these reasons, the judgment is reversed and the case is remanded to the trial court with instructions to conduct a new trial in which, if the same evidence is presented, the court must give a res ipsa loquitur instruction in accordance with the principles set forth in this opinion.

Judge LICHTENSTEIN and Judge KAPELKE * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2012.