Tony BALES, et al., Plaintiffs,

v.

James T. RUCH, State Director of Bureau of Land Management, Defendant,

United States of America, Real Party in Interest.

Civ. No. S–81–232 PCW.

United States District Court, E. D. California.

Aug. 5, 1981.

Laura Allen, Auburn, Cal., for plaintiffs.

Louis Demas, Sp. Asst. U. S. Atty., Sacramento, Cal., for defendant.

## MEMORANDUM AND ORDER

RAMIREZ, District Judge.

Upon reviewing and considering the specific pleadings, the memorandum of points and authorities submitted by counsel for the defendants, the various exhibits marked and received into evidence and the respective arguments of counsel for the defendants, the Court now makes the following Findings of Fact and Conclusions of Law pursuant to Rules 52 and 65, Federal Rules of Civil Procedure:

### INTRODUCTION

Plaintiffs, the occupants of a placer mining claim, filed a claim and thereafter purportedly staked out a specific area in Placer County, California. In February or March of 1981, plaintiffs received trespass notices from the Bureau of Land Management (hereinafter BLM) indicating that various personalty brought on the land by plaintiffs—a mobile home, several vehicles, a sweat lodge and assorted animals—would be impounded or destroyed unless plaintiffs voluntarily removed the objects prior to April 14, 1981. Plaintiffs thereafter commenced an action seeking preliminary and permanent injunctions precluding their ouster from the subject lands. On the day ouster was threatened to occur, this Court issued a temporary restraining order precluding the defendants from taking any action against plaintiffs until plaintiffs' motion for preliminary injunction could be heard.

In the interim between the issuance of the temporary restraining order and the preliminary injunction hearing, two additional factors occurred which bear mentioning on the issues involved: (1) BLM issued a new notice to plaintiffs indicating that it would "take no action to destroy, remove, impound, or otherwise physically interfere" with plaintiffs' personalty located on the claim "absent receipt of an appropriate court order". Government Exhibit "A". Since this revised notice made plaintiffs' motion moot inasmuch as there was no longer threat of immediate irreparable harm, plaintiffs' motion was subsequently denied; (2) Defendants filed their answer to plaintiffs' complaint and included therein a counterclaim seeking, *inter alia*, an injunction against plaintiffs' further occupancy of the land, removal of all personalty from the claim, and payment of rent for the period of occupancy.

In due course, defendants' motion for a temporary restraining order precluding plaintiffs' continued occupancy of and mining upon the land was duly noticed and ultimately granted in part and denied in part. Thereafter, a hearing on defendants' motion for preliminary injunction was scheduled and following the hearing the motion was granted for the reasons as more particularly stated herein.*

### GENERAL MINING CLAIM

#### I

■ It is clear that the Department of Interior has both the power and the primary responsibility to determine the validity of a mining claim, with review available in the district court. *See Best v. Humbolt Placer Mining Company*, 371 U.S. 334, 83 S.Ct. 379, 9 L.Ed.2d 350 (1963); *United States v. Zweifel*, 508 F.2d 1150, 1156 (10th Cir. 1975). Defendants, however, are seeking restraint not on the basis that plaintiffs do not have a valid placer mining claim, but rather because they have not acted in accordance with regulations regarding the exploitation of that claim and because they are alleged to have abused the privilege of mining upon public land.

■ Plaintiffs claim to be "locators" and while location is the act or series of acts whereby the boundaries of a claim are

---

* Various portions of the procedural history of the case have been deleted for purposes of publication. Said portions are totally irrelevant to the disposition of the legal issues before the Court.

marked, etc., it confers no right in the absence of an actual discovery. *Cole v. Ralph*, 252 U.S. 286, 40 S.Ct. 321, 326, 64 L.Ed. 567 (1919). Nonetheless, locator status creates "an exclusive right of possession and enjoyment, is property in the fullest sense, [and] is subject to sale and other forms of disposal." *Id.* at 325. In short, even though a locator has rights against private interlopers seeking to discover minerals, as to the United States, the locator is merely a licensee or tenant at will so long as good faith exploration continues. *Union Oil Co. of California v. Smith*, 249 U.S. 337, 39 S.Ct. 308, 310, 63 L.Ed. 635 (1918). Thus, even though the land has been appropriated to a mining purpose, title remains in the United States, *Id.* at 311; *Shiver v. United States*, 159 U.S. 491, 16 S.Ct. 54, 55, 40 L.Ed. 231 (1895) and, until there is an actual discovery of a valid mineral deposit, the locator has rights against the United States that are only "conditional and inchoate" at best. *United States v. Etcheverry*, 230 F.2d 193, 195 (10th Cir. 1956).

▆ From the foregoing, it is clear that any *other* use of a mining claim is disallowed. *United States v. Coleman*, 390 U.S. 599, 88 S.Ct. 1327, 1330, 20 L.Ed.2d 170 (1968). The test used to determine the validity of a use is "whether a person of ordinary prudence would be justified in the further expenditure of his labor and means with a reasonable prospect of success in developing a mine." *Multiple Uses, Inc. v. Morton*, 353 F.Supp. 184, 190 (D.Ariz.1972). Therefore, even if at one time there was a valid mineral prospect on claimed land, changed economic conditions can destroy the validity of continued occupation of a purported claim. *Mulkern v. Hammitt*, 326 F.2d 896, 898 (9th Cir. 1964). Even a continued holding of the land for several years with little or no exploitation can raise a presumption that the original claim has been destroyed. *United States v. Zweifel*, 508 F.2d 1150, 1156 n. 5 (10th Cir. 1975). The Ninth Circuit has explained the rationale behind the above-cited cases as follows:

> The act expressed the policy of Congress to confine the use of mining claims, and was directed at abuses which had grown up in the use of such claims for other than mining purposes. The Legislative history demonstrates the purpose of the Act, and specifically refers to one of the abuses as the acquisition of mining claims for 'residence or summer camp purposes.' (Citation omitted)

*United States v. Nogueira*, 403 F.2d 816, 823 (9th Cir. 1968). *See also United States v. Allen*, 578 F.2d 236, 238 (9th Cir. 1978); 30 U.S.C. § 612. Additionally, it has been held that public land should not be allowed to become "perpetually incumbered and occupied by a private occupant just because, at one time, he had there a valuable mine . . . ." *Mulkern v. Hammitt*, 326 F.2d 896, 898 (9th Cir. 1964).

In application to the case at bar, a locator gains "no more than the present and exclusive possession of the land for the purpose of mining and [does] not divest the legal title of the United States or impair its right to protect the land from trespass or waste." *United States v. Etcheverry*, 230 F.2d 193, 195 (10th Cir. 1956). The position taken by the United States is that even if the plaintiffs' claim turns out to be valid after examination by the Department of Interior, the use to which the land is being put is beyond the scope of the entitlement conferred by such a claim. As to this issue, the Ninth Circuit has held that:

> [a] district court clearly [has] jurisdiction to determine whether appellant occupied the lands in question in good faith for purposes of mining, and, if the court found appellant had not, to award damages for past trespass and [to] enjoin further occupancy. . . . Where the issue is one of the good faith of the occupancy of government property for mining uses rather than the validity of the claim, there is no reason to withhold judgment pending an administrative determination of the claim's validity. (Citation omitted)

*United States v. Russell*, 578 F.2d 806, 807–08 (9th Cir. 1978).

## FEDERAL REGULATORY SCHEME

### II

In Federal Register Volume 45, No. 230, dated November 26, 1980, the Secretary of

Interior promulgated mining regulations pursuant to the power granted by 30 U.S.C. § 22 and 43 U.S.C. § 1201, plus parts of the Federal Land Policy and Management Act of 1976, 43 U.S.C. § 1701, *et seq.* The policy underlying the regulation is expressed as follows:

Consistent with section 2 of the Mining and Mineral Policy Act of 1970 and section 102(a)(7), (8), and (12) of the Federal Land Policy and Management Act, it is the policy of the Department of the Interior to encourage the development of federal mineral resources and reclamation of · disturbed lands. Under the mining laws a person has a statutory right, consistent with Departmental regulations, to go upon the open (unappropriated and unreserved) federal lands for the purpose of mineral prospecting, exploration, development, extraction and other uses reasonably incident thereto. This statutory right carries with it the responsibility to assure that operations include adequate and responsible measures to prevent unnecessary or undue degradation of the federal lands and to provide for reasonable reclamation.

Fed.Reg. Vol. 45, No. 230, § 3809.0–6 at 78911. The objectives of the regulations are deemed to be:

(a) Provide for mineral entry, exploration, location, operations, and purchase pursuant to the mining laws in a manner that will not unduly hinder such activities but will assure that these activities are conducted in a manner that will prevent unnecessary or undue degradation and provide protection of nonmineral resources of the federal lands;

(b) Provide for reclamation of disturbed areas; and

(c) Coordinate, to the greatest extent possible with appropriate State agencies, procedures for prevention of unnecessary or undue degradation with respect to mineral operations.

*Id.* at § 3809.0–2 at 78910.

In effectuation of the objectives and the general policy, the Secretary requires that all operators "whose operations, including access across federal lands to the project area, cause a cumulative surface disturbance of five acres or less during any calendar year shall notify the authorized officer in the District Office of the Bureau of Land Management having jurisdiction over the land in which the claim[s] or project area is located." *Id.,* § 3809.1–3(a). Approval of a notice is *not* required, *id.,* § 3809.1–3(b), and no notice is required by "casual users"—a designation that will be discussed, *infra.* See *id.* § 3809.1–2. The notice is intended to identify and locate the operator, describe proposed activities and location thereof, give information regarding the claims under which the land is mined, and verify the operator's reclamation intent. *Id.,* § 3809.-1–3(c). If a notice is required, operations conducted thereunder are subject to monitoring by a BLM officer to assure they cause no "unnecessary or undue degradation of the federal land." *Id.,* § 3809.1–3(e). No bond is required for either casual or merely noticed uses. *Id.,* § 3809.1–9(a) at 78913. *All* operations, including casual uses, must "be conducted to prevent unnecessary or undue degradation of the federal lands and shall comply with all pertinent Federal and State laws," including those directed toward air quality, water quality, solid waste, wildlife, and cultural preservation, etc. *Id.,* § 3809.2–2. As to non-compliance with these regulations, Section 3809.3–2(a), at 78914, states that:

Failure of an operator to file a notice under § 3809.1–3 of this part or a plan of operation under § 3809.1–4 of this part will subject the operator, at the discretion of the authorized officer, to being served a notice of non-compliance or enjoined from the continuation of such operations by a court order until such time as a notice or plan is filed with the authorized officer.

It is this part of the rather extensive regulatory plan upon which defendants rely in seeking the present injunctive relief, although elements of good faith and past degradation also enter into the prayer.

Plaintiffs, on the other hand, claim to be "casual users" within the definition set

forth in Section 3809.0–5(b) of the regulations, found at page 78910 of the Federal Register cited above. This section reads as follows:

> "Casual Use" means activities ordinarily resulting in only *negligible disturbance* of the federal lands and resources. For example, activities are generally considered "casual use" if they do not involve the use of mechanized earth moving equipment or explosives or do not involve the use of motorized vehicles in areas designed as closed or limited to off-road vehicles.... (emphasis added)

*PRELIMINARY INJUNCTION STANDARD*

### III

The Ninth Circuit's evolving standard for the grant or denial of a preliminary injunction was recently summarized in *Los Angeles Memorial Coliseum Commission v. National Football League, et al.*, 634 F.2d 1197 (9th Cir. 1980). The court stated:

> In this circuit the moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor.... These are not separate tests, but the outer reaches of "a single continuum".... [T]he requirement that some balance of hardships favoring [the moving] party be established by the record [was not eliminated].... Under the continuum or sliding scale [analysis] a minimum showing on the merits is required even when the balance of harm tips decidedly toward the moving party. Conversely, at least a minimal tip in the balance of hardships must be found even when the strongest showing on the merits is made. (Citations omitted)

*Id.* at 1200, 1203.

▪ Thus, in determining whether to grant or deny a preliminary injunction, the Court must first examine the degree and certainty of the alleged injury to the moving party and the effect of injunctive relief on the non-moving party. The Court then balances the relative hardships of the parties. If the plaintiff demonstrates only a possibility of irreparable injury that tips the balance slightly in his favor, the plaintiff must demonstrate a probability of success on the merits. If, however, the plaintiff demonstrates a degree of irreparable injury that tips the balance of hardships decidedly in his favor, then the plaintiff need demonstrate only a possibility of prevailing on the merits. Between those two extremes, plaintiff's demonstration of each element may vary accordingly. *See City of Anaheim v. Kleppe*, 590 F.2d 285, 288 n. 4 (9th Cir. 1978).

*PLAINTIFFS' ALLEGATIONS RE HARDSHIPS*

### IV

▪ Plaintiffs' claim of irreparable injury hinges upon the following contentions: First, since they have a claim yet to be determined invalid by the administrative process, they would suffer great harm should they be enjoined from continuing to operate their mine. Second, forced removal of their personalty—which they claim is "reasonably incident" to valid mining activities—would, as a practical matter, stop mining operations since they require living accommodations and support facilities on the land to pursue that activity. Finally, they claim that it is imperative that they remain on the land in a residential status in order to protect their equipment and supplies which, they allege, are not subject to local police protection.

The personalty that plaintiffs claim is "reasonably incidental" to their mining operation includes a mobile home, several vehicles—both operable and inoperable—, assorted animals including a bull, cows, chickens and several dogs, a sweat lodge, a chicken coop or enclosure, and a garden. In defining the term "reasonably incidental" the Court defers to the language of 30 U.S.C. § 612, which reads as follows:

> (a) Any mining claim hereafter located under the mining laws of the United

States shall not be used, prior to issuance of a patent therefor, for any purposes other *than prospecting, mining or processing operations and uses reasonably incident thereto.* (Emphasis added)

(b) Rights under any mining claim hereafter located under the mining laws of the United States shall be subject, prior to issuance of patent therefor, to the right of the United States to manage and dispose of the vegetative resources thereof and to manage other surface resources thereof (except mineral deposits subject to location under the mining laws of the United States.)

The Ninth Circuit has held that "each case of this kind is controlled by the facts of each particular case." *United States v. Richardson*, 599 F.2d 290, 295 (9th Cir. 1979).

Viewing the facts of the case now before the Court, the Court finds that plaintiffs' use of the land under claim is clearly not a "casual use" inasmuch as plaintiffs are substantially littering the land, discharging waste water thereon, fencing off the road leading into the claim and posting "no trespassing" signs at the perimeters of the parcel in question. Furthermore, the Court finds that the disruption to the ecology of the area, as well as the exclusion of the public from a far greater area than is required to pursue placer mining, must be seen as something greater than a mere "casual use". Plaintiffs' allegation that these "incidental uses" are a prerequisite to survival as miners undercuts their claim of irreparable injury inasmuch as the argument demonstrates that the land is not worth exploiting unless plaintiffs can reside thereon. In short, the irrefutable activity of the plaintiffs is not a use contemplated by the regulatory or statutory scheme discussed herein and certainly does not conform to the legal standards established by the federal courts.

As to the need to protect their mining equipment, plaintiffs' statements in Depositions and in Answers to Interrogatories posed by defendants indicate that such equipment is minimal, consisting of such things as picks, shovels, etc., all of which are portable and could be removed at the end of a mining day. Thus, there is nothing in the way of necessary personalty to be protected. Accordingly, the Court finds that the plaintiffs are threatened by *no* irreparable harm or threat that is legally cognizable. This finding is bolstered by the fact that, should plaintiffs take their claim to patent, they would be entitled to much greater latitude in the use of the land and they would then receive a fee interest or something akin thereto.

## DEFENDANTS' ALLEGATIONS RE HARDSHIPS

### V

Defendants' claim of irreparable harm is based upon several grounds. First, by establishing a residence, installing a garden, moving a number of animals onto the land, and, at least for a time, blocking access and posting no trespassing signs, defendants argue that plaintiffs have excluded members of the general public from uses of the surface not consistent with plaintiffs' claim based upon exploitation of a placer mining claim. Pursuant to 30 U.S.C. § 612, *supra,* the United States does retain rights to manage surface resources, and the Ninth Circuit has held that members of the public may not be excluded—at least when the exclusion is accomplished by road barriers and no trespassing signs. See *United States v. Curtis-Nevada Mines, Inc.*, 611 F.2d 1277 (9th Cir. 1980). The obstruction of the entrance to the land is also claimed to be a violation of 43 U.S.C. § 1061, the Unlawful Inclosure Act, in light of defendants' allegation that plaintiffs have acquired their claim in bad faith. Second, plaintiffs have not given proper notice to the BLM of their intended activities as required under the Regulations discussed, *supra.* While plaintiffs did in fact file a "notice" as an attachment to their Opposition to Defendants' Motion, and although plaintiffs suggest that service of the original complaint and request for temporary restraining order suffice in this regard, the Court finds that none of these documents are sufficient to give the kind of notice

required to enable the BLM to pursue its mandate to manage and protect surface resources on federally owned lands. Finally, damage is alleged to result from plaintiffs undue degradation of the land and their failure to conform to operative and applicable State and local land use requirements.

In conclusion, the affidavits filed by defendants show personal observations of littering and several potentially dangerous conditions emanating from plaintiffs' continued possession of the land in question: (1) plaintiffs have cut trees from the land without attempting to get permits therefor or consulting with BLM officials as to need and proper procedure; (2) they have been served with notices of violation of several State and County Health Codes including the use of non-potable water, waste water discharge, improper sewage disposal system, unacceptable water piping, absence of hot and cold running water, no spark arrester on the chimney, an improperly installed chimney and fireplace in the mobile home, an unapproved gas connector, improper installation of a liquified petroleum gas vessel located partially under the mobile home, combustible materials near and under the mobile home, and inadequate stabilization of the mobile home. From the foregoing facts, it is patently clear that many of these violations threaten irreparable harm to the land and are supportive of findings that the balance of hardships tips sharply in defendants' favor, and that defendants will suffer irreparable injury in the absence of injunctive relief.

As to probable success on the merits, in light of plaintiffs' complete failure to even attempt to meet the requirements of the federal government with regard to mining claimants, their adamant refusal to attempt to remedy violations of State and County health laws, and their serious overuse of the surface resources under the guise of mining activity which is, at best, minimal, it is clear that defendants have more than a probable chance of success when this matter is finally adjudicated.

In light of the foregoing, it is hereby ordered that defendants' motion for preliminary injunction is Granted.

IT IS SO ORDERED.