2015 COA 177

**GOLD HILL DEVELOPMENT COMPANY, L.P.,** Plaintiff–Appellant,

v.

**TSG SKI & GOLF, LLC,** a Delaware limited liability company; **TSG Asset Holdings, LLC,** a Delaware limited liability company; and **Board of County Commissioners of the County of San Miguel, Colorado,** Defendants–Appellees.

**Court of Appeals No. 14CA1296**

Colorado Court of Appeals,
Div. VI.

Announced December 17, 2015

Rehearing Denied March 10, 2016

818

⚷168

⚷1024.1

Clay and Dodson, P.C., Aaron R. Clay, Delta, Colorado; Haynes & Haynes, LLC, David M. Haynes, Boulder, Colorado, for Plaintiff–Appellant.

Dackonish & Blake, P.C., Thomas W. Blake, Grand Junction, Colorado, for Defendants–Appellees TSG Ski & Golf, LLC and TSG Asset Holdings, LLC.

Earl G. Rhodes, LLC, Earl G. Rhodes, Grand Junction, Colorado, for Defendant–Appellee Board of County Commissioners of the County of San Miguel, Colorado.

Opinion by JUDGE BOORAS

¶ 1 Plaintiff-appellant, Gold Hill Development Company, L.P. (GHDC), appeals (1) the judgment dismissing its claims against defendants-appellees, TSG Ski & Golf, LLC and TSG Asset Holdings, LLC (together referred to as TSG) and the Board of County Commissioners of San Miguel County (SMC), and

(2) the order denying 60(b) relief. We affirm.

## I. Background

¶ 2 GHDC owns several mining lode properties in the vicinity of various properties owned by TSG in the Upper Bear Creek Basin in San Miguel County, Colorado.[1] GHDC alleged that access to its mining properties, particularly the Little Bessie, Modena, and Gertrude mining lodes, has historically been made by means of a trail known as the Gold Hill Road (the route), which traverses portions of TSG's properties before terminating on the Little Bessie. GHDC claims the right to use and maintain the route where it crosses over TSG's mining lode properties, including the May Girl; Fairview Nos. 2, 3, 4, and 5; Electric; Gold Medal; and Little Rose.

¶ 3 GHDC brought several claims against TSG: express easement; implied easement; implied easement by prior use; way of necessity; public road pursuant to R.S. 2477, Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251 (1866) (codified at 43 U.S.C. § 932), *repealed by* Federal Land Policy Management Act, Pub.L. No. 94–579, § 706(a), 90 Stat. 2743, 2786, 2793 (1976) (specifically providing that it would not terminate any right-of-way previously permitted); and public road pursuant to sections 43–2–201(1) and 43–1–202, C.R.S. 2015. SMC was later added as a party and ultimately defended against some of GHDC's claims, asserting that the route was not a public highway. SMC also filed a counterclaim against GHDC seeking declaratory relief that the Wasatch and East Fork trails, as they cross two of GHDC's mining properties, the Gertrude and the Modena, were public highways pursuant to R.S. 2477 and a public prescriptive easement under section 43–2–201(1)(c).

¶ 4 In a bench trial, the parties presented expert testimony regarding the mining history of the Telluride area, including testimony on the access to the mining claims in Bear Creek and Upper Bear Creek, the interpretation of maps, the location of the various

mining claims, and descriptions of avalanche danger in certain areas, along with other testimony. GHDC presented the testimony of a geologist, while TSG presented the testimony of a surveyor, an avalanche expert, and a local historian and map collector. SMC presented the testimony of a history professor at Fort Lewis College, in Durango, Colorado. Numerous other witnesses also testified regarding the trails and history of the area.

¶ 5 At the conclusion of GHDC's case, the trial court granted TSG's motion for directed verdict as to GHDC's express easement claim. Subsequently, the court dismissed all of GHDC's other claims against TSG. In a detailed and well-reasoned order, the trial court granted SMC's R.S. 2477 public road claim against GHDC as to the portion of the East Fork trail that crosses the Gertrude and SMC's section 43–2–201(1)(c) public prescriptive easement claim as to (1) the portion of the Wasatch/Bear Creek Trail as it crosses the Modena and (2) the portion of the East Fork trail as it crosses the Gertrude.

## II. R.S. 2477 Public Road Claims

¶ 6 On appeal, GHDC contends that the trial court erred in imposing additional requirements, not supported by Colorado law, for its R.S. 2477 claim across the TSG properties.

### A. Standard of Review

¶ 7 On appeal, "[w]e review a [trial] court's legal conclusions de novo and its factual findings for clear error." *Williams v. Crop Prod. Servs., Inc.,* 2015 COA 64, ¶ 4, 2015 WL 2341938. "The credibility of witnesses, sufficiency, probative effect, and weight of the evidence, as well as any inferences or conclusions to be drawn therefrom, are all within the province of the trial court." *Telluride Real Estate Co. v. Penthouse Affiliates, LLC,* 996 P.2d 151, 155 (Colo.App. 1999). It is also the trial court's role to resolve factual conflicts in the evidence. *See*

---

1. A map, provided by GHDC and SMC, and to which TSG has not objected, is attached to illustrate the relative locations of the parties' properties and other identifying features. *See infra* Appendix 1.

*In re Parental Responsibilities Concerning D.T.*, 2012 COA 142, ¶ 17, 292 P.3d 1120.

## B. Law

¶ 8 R.S. 2477 serves as an "express dedication of a right of way for roads over [public domain] lands, acceptance of which by the public results from 'use by those for whom it was necessary or convenient.'" *Brown v. Jolley*, 153 Colo. 530, 537, 387 P.2d 278, 281 (1963). R.S. 2477 provided: "The right of way for the construction of highways over public lands, not reserved for public uses, is granted." § 8, 14 Stat. at 253. "R.S. 2477 was 'essentially the only authority' by which the public could establish roads across federal lands." *Kane Cty., Utah v. United States*, 772 F.3d 1205, 1222 (10th Cir.2014) (quoting *S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 425 F.3d 735, 786 (10th Cir.2005)).

¶ 9 "Us[e] is the requisite element, and it may be by any who have occasion to travel over public lands, and if the use be by only one, still it suffices." *Brown*, 153 Colo. at 537, 387 P.2d at 281 (quoting *Leach v. Manhart*, 102 Colo. 129, 133, 77 P.2d 652, 653 (1938)). It is the claimant's burden to establish public use of the road before the government land is withdrawn from the public domain. *Korf v. Itten*, 64 Colo. 3, 4, 169 P. 148, 149 (1917). Property is removed from the public domain at least by the date that a location certificate is recorded. *See Camp Bird Colo., Inc. v. Bd. of Cty. Comm'rs*, 215 P.3d 1277, 1289 (Colo.App.2009).

## C. Across the TSG Properties

¶ 10 GHDC first argues that the court erred in requiring it to prove that the route was a "through route" and that the alleged trail segment "connect[ed] to other roads." The trial court concluded that "[GHDC] has failed to show that the public was using the alleged route to gain access to [GHDC]'s mining claims, or any other claims, prior to [the 1884 May Girl removal date]." It quoted from *Sprague v. Stead*, 56 Colo. 538, 543, 139 P. 544, 546 (1914), for the proposition that the route must be "confined to a reasonably certain and definite line." The *Sprague* court further elaborated that "[a] highway, however established, should

have reasonable certainty of limits and direction." *Id.*

¶ 11 GHDC argues that the trial court should have found the existence of an R.S. 2477 route based on: (1) the testimony of the geologist, which the trial court noted was unsubstantiated; (2) the fact that some mining claims had been staked along Gold Hill Ridge prior to 1884; and (3) the presence of a trail segment along the ridge on the 1898 United States Geological Survey (USGS) map (surveyed in 1894) and on the May Girl survey (conducted in 1887). However, simply because some people were in the area of the ridge does not prove the existence of a "reasonably certain and definite" route across TSG's properties, regardless of whether it was a connecting "through route." Moreover, the court noted that the surveyor testified:

> the trail segment as shown on the May Girl mineral survey plat did not match up with or appear on 18 other mineral surveys he examined that lie south of the May Girl. [And although] all mineral surveyors at the time did not always place all trails or landmarks on their survey plats ... [the surveyor] believed it was significant that none of the 18 mineral surveys he reviewed showed any such trail.

Therefore, the record supports the findings of the trial court, and we perceive no error.

¶ 12 GHDC next argues that the court erred in evaluating its claim under the 1884 May Girl removal date, and that instead, it should have separately evaluated each mining property over which the alleged route traversed. TSG, in response, argues that the court's use of the May Girl removal date was proper because it was the earliest of the TSG properties along the route to be removed from the public domain.

¶ 13 Neither party provides any support for its assertion. However, even assuming that the court erred, we conclude that any such error was harmless. *See* C.R.C.P. 61; *Tarco, Inc. v. Conifer Metro. Dist.*, 2013 COA 60, ¶ 18, 316 P.3d 82. GHDC noted that the other mining lode properties over which the route traversed had later removal dates ranging from 1890 to 1904. Even if the court

was required to analyze each such property separately, GHDC would nevertheless still have to establish the existence of the route over those properties before their individual removal dates.

¶ 14 The trial court noted, however, that GHDC had failed to prove the existence of the trail by a preponderance of the evidence before the relevant time period. The court also observed that there was "significant evidence" that the route was not constructed until 1956, and that prior to that date, access was via the Bear Creek and Wasatch trails. It stated:

> The earliest that the existence of any real route is shown on Gold Hill is the 1898 [USGS] map which utilizes data from 1894.... [T]here are no references to a trail on Gold Hill in any newspaper articles, journals or other writings. There is no evidence of any acceptance or acknowledgement of such route by the county, nor is it denoted on any maps prior to 1898.... Other than the opinion testimony of [the geologist] [that the route was being used as early as 1877] and the existence of a trail segment shown on the May Girl mineral survey, there is no evidence that a trail existed on Gold Hill or that the public used such trail prior to 1884.

GHDC insists, however, that the 1898 USGS map establishes the existence of the trail and should be credited. But, it is the trial court's role to evaluate the weight and credibility of evidence, and because we conclude that the court's findings are supported by the record, we perceive no error. *See D.T.,* ¶ 17; *Telluride Real Estate Co.,* 996 P.2d at 155.

### D. Across the Gertrude

■ ¶ 15 GHDC argues that the trial court's findings and analysis with respect to GHDC's and SMC's R.S. 2477 claims are "inconsistent" because the court at times credited the absence of certain trails to deny public use, while at other times it failed to acknowledge the absence of other trails on surveys and maps presented at trial. Specifically, GHDC complains that the trial court

failed to credit the absence of certain trail segments on several mineral surveys when it concluded that SMC had proven an R.S. 2477 road across GHDC's Gertrude mining property. GHDC asserts that this was inconsistent with the court's ruling that GHDC's R.S. 2477 claim failed because the route did not appear on the mineral surveys over which it traversed.

¶ 16 The court found, however, based on the testimony of the geologist and the surveyor, that "[m]ineral [s]urveys, depending upon the particular surveyor, may show trails or other characteristics[,] but [they] do not always show such features." The court's findings as to public use were also not based solely on maps and mineral surveys, but were based, as well, on extensive testimony regarding the use and nonuse of the various routes. Because there is support in the record for the court's findings, we perceive no error. *See D.T.,* ¶ 17; *Telluride Real Estate Co.,* 996 P.2d at 155.

¶ 17 GHDC also complains that the court's citation to the 1879 Ouray County declaration as evidence of the existence of public use of the East Fork Trail is inconsistent because the court elsewhere stated, in the words of GHDC, that "the resolution must be disregarded as to the Wasatch Trail because it was passed while the subject property was privately owned." GHDC's assertion of error, however, is based on an apparent misunderstanding of the trial court's order. As to SMC's public prescriptive easement claim, the court stated that the declaration must be disregarded as an overt act under section 43–2–201(1)(c) because it occurred *prior to* the subject properties *becoming private.* Because the question in an R.S. 2477 claim is whether or not there was evidence of public use *prior to removal* of the property from the public domain, and not after the property is privately owned, the court's reasoning is not inconsistent.

■ ¶ 18 Finally, GHDC argues that SMC failed to demonstrate public use of the route over the Gertrude from 1890 to 1899.[2]

2. The Gertrude location certificate was recorded in 1899, but it was a relocation of a previous claim, the John Borland, the location certificate

of which was originally recorded in 1868. The John Borland claim was properly cancelled by the General Land Office in 1890, releasing it

GHDC, however, does not accurately cite to its preservation of this argument below, and our review of the record does not indicate that such an argument was raised. "Arguments not raised before the trial court may not be raised for the first time on appeal." *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 340 n. 10 (Colo.2004). Therefore, we decline to consider it. *See also O'Quinn v. Baca*, 250 P.3d 629, 631 (Colo.App.2010) (when a party fails to cite where an issue was raised and ruled upon, we are not required to search the record for evidence of preservation).

### III. SMC's Public Prescriptive Easement Under Section 43–2–201(1)(c)

¶ 19 GHDC argues that the court erred in finding a public prescriptive easement across GHDC's properties[3] under section 432–201(1)(c) in favor of SMC.

¶ 20 As noted, "[w]e review a district court's legal conclusions de novo and its factual findings for clear error." *Williams*, ¶ 4.

¶ 21 Section 43–2–201(1)(c) provides that "[a]ll roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years" are declared to be public highways. To establish a public prescriptive easement under the section, a party must show: (1) a "claim of right"; (2) public use adverse to the landowner's interest; (3) such use continued for the requisite twenty-year period; and (4) actual or implied knowledge of the public use by the landowner and no objection to such use. *McIntyre v. Bd. of Cty. Comm'rs*, 86 P.3d 402, 409 (Colo.2004).

¶ 22 The trial court found that the twenty-year prescriptive period began in 1927 with the identification of the "entire Wasatch trail

... including the portion across the Modena ... [and the] portion [of the East Fork trail] in the general area of the Gertrude" on a hand-drawn United States Forest Service (USFS) map. The court concluded that the map served both as evidence of established public use and of the overt act necessary for the "claim of right" requirement.

¶ 23 The court also noted several other acts by SMC and the USFS that, collectively, were sufficient to provide notice of the public claim of right, including: (1) Board of County Commissioners of Ouray County[4] meeting minutes from 1879 declaring

a County trail from San Miguel Park up Bear Creek to a point about three miles from the mouth of said creek at which point the trail to fork, one in a S.E. direction to the summit of the range connecting with the Silverton trail, the other up the west fork about one mile to the summit of the range connecting with the Turkey Creek trail[;][5]

(2) maintenance work performed by SMC "on the Wasatch Trail at least to the area of the Burro/Nellie Bridge, including work on the bridge"; (3) placement of signage by the USFS on the Bear Creek, Wasatch, and East Fork trails as early as 1956; (4) maintenance by the USFS on the Burro/Nellie Bridge in 1989; and (5) identification of the Bear Creek, Wasatch, and East Fork trails on USFS trail maintenance plans, including one from 2006.

¶ 24 The court concluded that testimony presented at trial also showed a "pattern of general public use adverse to the interest of the owners ... until [GHDC] threatened to close such access in 2010," and that the owners had knowledge of such use and made no objection.

___

back into the public domain. *See Mineral Farm Mining Co. v. Barrick*, 33 Colo. 410, 415, 80 P. 1055, 1056 (1905).

3. Specifically, the trial court ordered: "SMC's claim under [section] 43–2–201(1)(c) is granted as to the Modena and the Gertrude and that portion of the East Fork Trail as it crosses the Gertrude is declared to be public; that part of the Wasatch/Bear Creek Trail as it crosses the Modena is declared to be public."

4. San Miguel County was created from Ouray County in March 1883. An Act to Change the Name of the Counties of Ouray and Uncompahgre, 1883 Colo. Sess. Laws 123.

5. The trial court noted that "[t]his description is of a trail in the vicinity of the Wasatch trail, however, it is not apparent that it in fact describes the portion that crosses the Modena."

¶ 25 On appeal, GHDC first argues that the prescriptive period could not have run between 1943 and 1946 because of the undisputed fact that SMC, due to nonpayment of taxes, owned the Gertrude and Modena lodes during that time.[6] SMC concedes that the prescriptive period could not have run during that period, but it insists that the trial court's finding can be affirmed on any twenty-year period of prescription before 1943 or after 1946. *See Harrison v. Everett,* 135 Colo. 55, 61, 308 P.2d 216, 219 (1957).

¶ 26 The trial court's order, however, noted that "there was little if any evidence of any overt acts by a public entity or use by the public" between 1906—when the mining patents were issued on the Modena and Gertrude and, therefore, when they became private property subject to prescription—and 1927. With the period between 1927 and 1943 failing to reach the requisite twenty-year period, SMC can rely only on a prescriptive period beginning after 1946.

¶ 27 GHDC does not dispute the trial court's findings that a pattern of public use continued on the trails adverse to the owners from at least 1927 until 2010, when GHDC threatened to close access. GHDC argues, however, that there was no overt act sufficient to constitute a claim of right as required by the statute.

¶ 28 Specifically, it argues that actions by the USFS were insufficient to constitute the overt act required to give notice of the public's claim of right. Instead, it claims that under *McIntyre v. Board of County Commissioners,* SMC, rather than the USFS, must have taken the overt action to demonstrate a claim of right: "The evidence must include some overt act *on the part of the public entity responsible for public roads in the jurisdiction* sufficient to give notice of the public's claim of right." 86 P.3d at 406 (emphasis added).

¶ 29 However, as the trial court noted, *McIntyre* is not so clear. When discussing the overt act/claim of right requirement, the *McIntyre* court highlighted that the purpose of the requirement was to provide notice to the landowner of the public's claim of right.

*See id.* at 411–14. The court acknowledged that maintenance performed by the Colorado Division of Mined Land Reclamation could have constituted an overt act for the county's section 43–2–201(1)(c) prescriptive claim, but the court disregarded it because it had been performed with the permission of the landowner. *Id.* at 410. Among its listing of acceptable overt acts was the use of the road for "mail delivery," a function of the United States Postal Service. *Id.* at 414. The *McIntyre* court also interchangeably and imprecisely referred to who must complete the overt act as "a public entity," "the public entity claimant," and "the public entity responsible for public roads in the jurisdiction," along with specifically referencing the county itself. *Id. passim.* Therefore, we conclude that the actions of a public entity other than SMC could serve as the overt acts necessary for a public claim of right under *McIntyre.*

¶ 30 Regardless, we note that the trial court cited to several actions—by both the USFS and SMC—to support a public claim of right. GHDC insists that several of these actions, including the 1879 Ouray County declaration and the 1927 USFS map, are insufficient to constitute a claim of right because (1) the 1879 declaration occurred before the properties became private; and (2) a prescription period beginning with the 1927 map, as mentioned above, would fail to meet the twenty-year statutory period because of the gap in private ownership. However, considering the *McIntyre* court's focus on the notice function of the overt act, we see no reason that either of these two acts would be insufficient.

¶ 31 Although the record is unclear on the method by which the 1879 minutes and the 1927 USFS map have been retained or recorded for public access, they were nevertheless obtainable by the parties for the purposes of this action. The acts of identification on a map of public trails and public declaration in a county meeting also resonate with more permanence than *McIntyre*'s other citations of acceptable overt acts, such as occasional plowing of snow, road maintenance, or mail delivery. *See id.* at 412 (citing *Bd. of Cty. Comm'rs v. W.H.I., Inc.,* 992

---

6. Specifically, SMC was issued a treasurer's deed to the two properties in 1943.

F.2d 1061 (10th Cir.1993)) (noting that an improperly recorded board of county commissioners resolution declaring the intent to claim a road as public was sufficient to provide the landowner with notice). While those acts may take place once or only occasionally, the USFS map and county minutes serve as continual notice of the public's claim of right.

¶ 32 Further, although *McIntyre* may be interpreted as requiring the 'overt act to "commenc[e] the prescriptive period," in cases such as this, where evidence of public use and acceptance exists prior to the property becoming private, it makes more sense to interpret the overt act as a prerequisite rather than a point of initiation. *Id.* at 414; *see also id.* at 413 ("The public entity claimant must … take some overt action or actions that give the property owner notice of the public's claim of right in order for the prescriptive period to commence running under section 43–2–201(1)(c)."). "[W]ithout [an overt act], the prescriptive period never begins." *Id.* at 414. Therefore, we conclude that the record supports the court's finding of overt acts that sufficiently satisfy the requirements of *McIntyre.* .

¶ 33 GHDC also argues that the trial court erred in concluding that maintenance done on other portions of the trail was sufficient to put the owners of the Modena and Gertrude on notice of the public's claim of right to the portions across their property. The court, in its order, stated:

> The evidence regarding the [USFS] … does not indicate that much if any maintenance was performed south of the Burro/Nellie Bridge, and not definitively upon the Modena or the Gertrude.… All of [the] acts did not occur specifically on the Modena or the Gertrude, however, [the] acts encompassed a general pattern of use and activity that involved the entire trail, including that portion across the Modena and Gertrude. Because the trails at issue here are part of a larger system, the Court concludes that work that was done on other portions of the trails which then connect with the portions of the trail as it crosses the Modena and the Gertrude gave notice

to the landowners of the claim of right to the trail.

As noted, however, the court cited to at least one overt act that encompassed the entire disputed trail—the 1927 USFS map—including the portions that pass through the Gertrude and Modena. We therefore discern no error in the court's finding of a public prescriptive easement across GHDC's properties.

## IV. Public Road Claim under Sections 43–2–201(1)(e) and 43–1–202

¶ 34 GHDC argues that the court erred in failing to find a public highway across TSG's property under sections 43–2–201(1)(e) and 43–1–202; .

### A. Standard of Review

¶ 35 Again, "[w]e review a district court's legal conclusions de novo and its factual findings for clear error." *Williams*, ¶ 4. Questions of statutory interpretation are reviewed de novo. *Tulips Investments, LLC v. State ex rel. Suthers*, 2015 CO 1, ¶ 11, 340 P.3d 1126. If a statute is "clear and unambiguous on its face," we apply it as written. *Wells Fargo Bank, Natl Ass'n v. Kopfman*, 226 P.3d 1068, 1072 (Colo.2010).

### B. Law and Analysis

¶ 36 Section 43–2–201(1)(e), originally enacted in 1883, provides that "[a]ll roads over the public domain, whether agricultural or mineral," are declared to be public highways. Section 43–1–202 states that "[a]ll roads and highways which are, on May 4, 1921, by law open to public traffic shall be public highways.…"

¶ 37 In dismissing the claim, the trial court concluded that GHDC had failed, as part of its R.S. 2477 claim, to prove by a preponderance of the evidence the existence of the route prior to 1884—the year that the location certificate for the May Girl was recorded, making it the earliest of TSG's mining properties along the route to be removed from the public domain. *See Camp Bird Colo., Inc.*, 215 P.3d at 1289 (the earliest possible date of removal from public domain was the date the location certificate was recorded); *see also Bd. of Cty. Comm'rs v. Ritchey*, 888 P.2d 298, 300 (Colo.App.1994)

("Public land, or land on the public domain, is land which is open to sale or other disposition under general laws. Any land to which any claims or rights of others have attached does not fall within the designation of public land." (citing *Bardon v. N. Pac. R.R. Co.*, 145 U.S. 535, 12 S.Ct. 856, 36 L.Ed. 806 (1892))); *Bales v. Ruch*, 522 F.Supp. 150, 153 (E.D.Cal.1981) (locator status creates "an exclusive right of possession," but "title remains in the United States" until a patent is issued) (citation omitted).

¶ 38 The trial court noted that GHDC's burden of proof for this claim was essentially the same as for its R.S. 2477 claim over the TSG properties. We agree. GHDC needed to demonstrate, by a preponderance of the evidence, public use on the route before the relevant removal dates. For the same reasons articulated above, we conclude that the trial court's findings are supported by the record, and, therefore, we perceive no error. *See D.T.*, ¶ 17; *Telluride Real Estate Co.*, 996 P.2d at 155.

¶ 39 GHDC also argues, however, that under section 34–48–104, C.R.S. 2015, originally codified as territorial law in 1868, Ch. 62, sec. 9, 1868 Colo. Sess. Laws 466, the alleged Gold Hill route was open to the public, and therefore, constitutes a public highway under section 43–1–202. § 34–48–104. The section states that "[e]very miner has the right-of-way across any and all claims for the purpose of hauling quartz from his claim." *Id.* The plain language of that section—that miners had the right-of-way across other mining claims for the purpose of hauling quartz—fails to establish that the alleged route was "open to *public* traffic" by operation of law pursuant to section 43–1–202. (Emphasis added.)

¶ 40 This statute allowed only for miners to have such rights-of-way, and for the limited purpose of hauling quartz—not for the general public to use for any permissible uses. *See Lovvorn v. Salisbury*, 701 P.2d 142, 144 (Colo.App.1985) ("The ultimate distinction between a public road and a private easement, however acquired, is that the private easement can be, and is, limited to specific individuals and/or specific uses while a public road is open to all members of the public for any uses consistent with the dimensions, type of surface, and location of the roadway."). We see no error.

## V. Express Easement

¶ 41 GHDC contends that the trial court erroneously dismissed its express easement claim for failing to demonstrate the intent to convey an express easement. GHDC argues that the language contained in its patents for the Little Bessie, Modena, Gertrude, and Euclid Avenue lodes, together with precedent and section 34–48104, establishes the necessary intent for an express easement over the TSG properties to provide access to GHDC's patented mining claims.

### A. Patent Language

¶ 42 The GHDC patents contain the following (or nearly identical) language:

TO HAVE AND TO HOLD said mining premises, *together with all the rights, privileges, immunities, and appurtenances* of whatsoever nature thereof belonging unto the said grantees above named, and to their heirs and assigns forever, subject nevertheless to the above-mentioned and to the following conditions and stipulations:

. . . .

Third. That in the absence of necessary legislation by Congress, *the Legislature of Colorado may provide rules for working the mining claim or premises hereby granted, involving easements,* drainage, and other necessary means to its complete development.

(Emphasis added.)

### B. Standard of Review

¶ 43 The existence and extent of an expressly created easement are "determined by interpreting the conveyance instrument," which we review de novo. *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1235 (Colo.1998).

¶ 44 In a bench trial, a motion for a directed verdict under C.R.C.P. 50 is actually a motion to dismiss under C.R.C.P. 41(b)(1). *See People v. Shifrin*, 2014 COA 14, ¶ 131, 342 P.3d 506; *Frontier Expl., Inc. v. Am. Nat'l Fire Ins. Co.*, 849 P.2d 887, 890

(Colo.App.1992). Thus, the standard of review is "whether judgment in favor of defendant is justified on the evidence presented." *Colo. Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 25 (Colo.App.2010) (quoting *DSCO, Inc. v. Warren*, 829 P.2d 438, 441 (Colo.App.1991)). Dismissal is warranted if "upon the facts and the law the plaintiff has shown no right to relief." *Shifrin*, ¶ 132 (citation omitted).

█ ¶ 45 The trial court is given broad discretion in determining whether to grant a dismissal under C.R.C.P. 41(b)(1). *Id.* at ¶ 135. As a result, the trial court's ruling will not be disturbed unless "the findings and conclusions of the trial court are so manifestly against the weight of evidence as to compel a contrary result." *Id.* (quoting *Am. Guarantee & Liab. Ins. Co. v. King*, 97 P.3d 161, 165 (Colo. App. 2003)).

█ ¶ 46 "If reasonable minds could differ over the inferences and conclusions to be drawn from the evidence at the conclusion of a plaintiff's case, then an appellate court cannot disturb the findings and conclusions of the trial court." *Id.* at ¶ 136 (citation omitted); *see Smith v. Weindrop*, 833 P.2d 856, 857 (Colo.App.1992).

### C. Law and Analysis

█ ¶ 47 An express easement is created if the "owner of the servient estate enters into a contract or makes a conveyance, which complies with the Statute of Frauds or an exception to the Statute of Frauds, with the intent to create a servitude." *Precious Offerings Mineral Exch., Inc. v. McLain*, 194 P.3d 455, 457 (Colo.App.2008).

█ ¶ 48 An easement may be created by reservation in a deed conveying the servient or burdened property to another. *Bolinger v. Neal*, 259 P.3d 1259, 1264 (Colo.App. 2010). To determine whether an easement has been expressly granted—and, if it has, the extent of such easement—we look first to the deed or other conveyance instrument,

construing it to ascertain the parties' intent. *Lazy Dog Ranch*, 965 P.2d at 1235. "Words which clearly show the intention to give an easement are adequate to demonstrate its creation, provided the language in the instrument is sufficiently definite and certain in its terms. The writing must contain a description of the [servient] land ... with sufficient clarity to locate it with reasonable certainty." *Hornsilver Circle, Ltd. v. Trope*, 904 P.2d 1353, 1356 (Colo.App.1995) (citations omitted). However, no particular words are necessary for the grant of an easement. *See Isenberg v. Woitchek*, 144 Colo. 394, 400, 356 P.2d 904, 907 (1960).

¶ 49 GHDC argues that the language in the patent, together with other sources, expressed an intent on behalf of the United States to create an easement over TSG's properties in favor of GHDC's mining properties. The language in the patent, on its own, is clearly not sufficiently definite and certain in its terms to express an intent to create an easement across the land. *Cf. Hornsilver Circle, Ltd.*, 904 P.2d at 1356 (a deed was reasonably certain when it provided "in accurate detail, the size, dimensions, type of use, and location of the easement on the servient tenement, as well as the precise legal description of the servient property" and "[t]he only deficiency in the reservation was the inaccurate legal description of the lot owned by the holder of the easement"); *see Stevens v. Mannix*, 77 P.3d 931, 933 (Colo. App.2003) (A cross-easement agreement reflected "an unequivocal intent to create ingress and egress easements 'over and across such portions of the Property designated on the Site Plan'" where the site plan was attached to the agreement and "depicts the property mutually benefited and burdened by the easements.").

¶ 50 GHDC, however, argues that the language in the patent [7] allows for later acts of the Colorado legislature, including section 34–48–104, to provide the requisite intent to create an express easement for access to its mining properties. Again, that statute

---

7. The language in the patent states that "the rights, privileges, immunities, and appurtenances" derived from the patent are "subject nevertheless ... to the following conditions and stipulations: that in the absence of necessary legislation by Congress, the Legislature of Colorado may provide rules for working the mining claim or premises hereby granted, involving easements."

states: "Every miner has the right-of-way across any and all claims for the purpose of hauling quartz from his claim." § 34–48–104.

¶ 51 GHDC also cites to precedent that it argues provides the requisite intent, including *Wagner v. Fairlamb*, 151 Colo. 481, 487, 379 P.2d 165, 169 (1963) ("[T]he law assumes that no person intends to render property conveyed inaccessible for the purpose for which it was [g]ranted."), and *Heath v. Parker*, 30 P.3d 746, 750–51 (Colo.App.2000) ("[R]easonable surface use, including access, is part of the 'bundle of sticks' of mineral claim property rights, including unpatented claims."). However, we need not consider these additional sources because the patent language, itself, is not ambiguous. *See Lazy Dog Ranch*, 965 P.2d at 1235 (if the language of an easement accurately and unambiguously reflects the intentions of the parties, the court should disregard extrinsic evidence and give effect to the language of the easement). Therefore, the trial court did not err in dismissing GHDC's express easement claim.

### VI. Denial of GHDC's June 4, 2014, Motion for Reconsideration and Clarification

■ ¶ 52 An order denying a motion for reconsideration under C.R.C.P. 59 is reviewed for abuse of discretion. *Top Rail Ranch Estates, LLC v. Walker*, 2014 COA 9, ¶ 74, 327 P.3d 321.

¶ 53 On June 4, 2014, GHDC filed a "Motion for Reconsideration and Clarification" of the trial court's May 20, 2014, order dismissing six of its claims. Although GHDC did not identify the rule upon which it based the motion, the trial court considered it as a motion filed pursuant to C.R.C.P. 59. Because the motion was filed fifteen days after the court's May 20 order, the court dismissed the motion as untimely under the rule, which requires that a post-trial motion be filed within fourteen days of the "entry of judgment." C.R.C.P. 59(a).

■ ¶ 54 First, GHDC's reply brief appears to argue, citing *Maslak v. Town of Vail*, 2015 COA 2, ¶¶ 26–27, 345 P.3d 972,

that its motion was untimely filed due to clerical error, and therefore should not have been denied. Because GHDC cites to no place in the record where this argument was raised in the court below, we will not consider it. *Markus v. Brohl*, 2014 COA 146, ¶ 63, 2014 WL 5369981 ("Arguments not presented to or ruled upon by the district court cannot be raised for the first time on appeal.").

■ ¶ 55 Second, GHDC argues that the court erred in treating its motion as an untimely Rule 59 motion because the May 20 order was not a final order.[8] In support, GHDC cites to *Bowman v. Songer*, 820 P.2d 1110, 1113 (Colo.1991), which states that Rule 59, and its filing deadlines, "[do] not apply to motions to reconsider an order granting a new trial [because such orders are not final]."

■ ¶ 56 Generally, motions for reconsideration are discouraged, but they can be construed under C.R.C.P. 59 as motions to alter or amend findings or the judgment of the court. *See Stone v. People*, 895 P.2d 1154, 1155–56 (Colo.App.1995); *see also* Rule Change 2014(11), Colorado Rules of Civil Procedure (Amended and Adopted by the Court En Banc, Sept. 18, 2014), https://perma.cc/X83R-X8WR (adding subsection (11) to C.R.C.P. 121, section 1–15, stating that "[m]otions to reconsider interlocutory orders of the court, meaning motions to reconsider other than those governed by C.R.C.P. 59 or 60, are disfavored").

¶ 57 Even if the May 20 order was not final, the October 2014 remand by a motions division of this court for entry of a final order cured any error in the trial court's denial of the premature Rule 59 motion as untimely. After the entry of the November 3 amendment, GHDC could have immediately refiled its reconsideration motion. It did not.

¶ 58 Alternatively, C.R.C.P. 59(j) states that "[a]ny post-trial motion that has not been decided within the 63–day determination period shall, without further action by the court, be deemed denied for all purposes." Denial after expiration of that period is mandatory. *Driscoll v. Dist. Court*, 870 P.2d 1250, 1252 (Colo.1994). If the motion to

---

8. It appears that the final order was the November 3, 2014, amendment, which included the survey information detailing the exact location of the trail.

reconsider is construed as having remained pending after the court's erroneous denial for untimeliness, the November 3 order would have begun the tolling period under C.R.C.P. 59(j). When the trial court made no decision during that sixty-three-day period, the motion would have been deemed automatically denied, and GHDC at that point could have pursued relief of that automatic denial. *See De Avila v. Estate of DeHerrera*, 75 P.3d 1144, 1148 (Colo.App.2003). Therefore, we conclude that any error of the trial court in denying GHDC's motion does not warrant reversal.

### VII. Actions of the USFS

■ ¶ 59 GHDC asserts that the trial court "[effectively] created [USFS] trails … under R.S. 2477 and … [section] 43–2–201(1)(c)," and, in support, it cites SMC's admission in its written closing argument that it was not asserting ownership of the trails.[9] Further, it argues that the trial court's decision "circumvents Fifth Amendment requirements of Due Process and Just Compensation" and violates 36 C.F.R. § 212.7(b) (2015).[10]

¶ 60 However, the trial court's determination that the aforementioned trails over GHDC's property are public roads under R.S. 2477 and section 43–2–201(1)(c) grants no ownership right, or other special interest, to the USFS. *See State v. Cyphers*, 74 P.3d 447, 449 (Colo.App.2003) ("The declaration of a public road under [section] 43–2–201(1)(c) does not result in the 'acquisition' of property interests, including easements, for any particular party. It only makes available to the public a route through private land. Hence, the [plaintiff]'s interest in and right to use the route recognized under [section] 43–2–201(1)(c) are no greater or lesser than those of any member of the general public." (citing *Bd. of Cty. Comm'rs v. Flickinger*, 687 P.2d

975, 980 (Colo.1984))); *Long v. Area Manager, Bureau of Reclamation*, 236 F.3d 910, 915 (8th Cir.2001) (the right of an individual to use a public road is not a right or interest in property); *Kinscherff v. United States*, 586 F.2d 159, 160 (10th Cir.1978) (members of the public do not have "title" in public roads and cannot assert ownership thereof). We therefore reject GHDC's federal due process, just compensation, and 36 C.F.R. § 212.7(b) arguments, which are each premised on the faulty assumption that the USFS has acquired some easement or interest in the property pursuant to the trial court's decision.

■ ¶ 61 Finally, GHDC argues that because SMC does not own the trails, the USFS is an indispensible party in this action. We disagree. "Under C.R.C.P. 19, a person or entity whose presence is necessary to assure complete relief or to protect a legally cognizable interest at stake in an action must be joined as a party thereto." *Williamson v. Downs*, 829 P.2d 498, 500 (Colo.App.1992). However, "mere interest in the subject matter of the litigation, even though substantial, is not sufficient in itself to warrant a determination of indispensability." *Id.*

■ ¶ 62 The burden is on the asserting party to demonstrate the necessity for joinder. *Id.* GHDC, however, cites to no evidence in the record that the USFS actually claims a legally cognizable interest in the subject properties. Moreover, GHDC stipulated before trial that the USFS was not an indispensable party. We therefore perceive no error. *See id.*

### VIII. Denial of Rule 60(b) Motion for New Trial

¶ 63 GHDC contends that the trial court abused its discretion in denying its C.R.C.P.

---

**9.** Here, the County is not asserting that the County owns the Wasatch and East Fork Trails, rather the County, on behalf of the public, is asserting that the trails are public. Since the County is merely serving as a representative of the public's interest, it does not matter which public authority establishes the claim of right, the result is a public trail regardless.

**10.** That regulation states that

easements for road and trail construction across non-Federal lands and easements or rights of use over non-Federal roads and trails … may be acquired by purchase, condemnation, donation, or as a reciprocal for permits or easements for roads or trails to be constructed or for easements over or permits to use existing roads or trails.

60(b) motion for a new trial.[11] GHDC urges that the court should have granted the motion under C.R.C.P. 60(b)(2) and (5) based on TSG's surveying expert conducting additional research, site visits, and further investigation, just prior to and during trial, which GHDC contends violated the expert's disclosure obligations under C.R.C.P. 26. GHDC asserts that because of these disclosure violations, it was denied a full and fair opportunity to cross-examine this expert and to verify and rebut his testimony.

¶ 64 The trial court denied GHDC's Rule 60(b) motion, finding that the complained-of activities by the expert were not of such a nature that TSG was required to disclose them. The court noted that GHDC was "unable to point to any specific testimony that may have resulted from the noted activities that was previously unknown or was a surprise" to GHDC and, thus, the court found that there was no basis to find any prejudice to GHDC's ability to defend against the evidence. The trial court further found that it was not unusual for an expert witness to prepare for trial, and that none of the expert's activities suggested that he reviewed new information or testified to anything that could have been construed as a surprise. The trial court stated that despite GHDC's contention otherwise, TSG's expert appeared to simply be engaging in trial preparation.

### A. Standard of Review

¶ 65 The grant or denial of a C.R.C.P. 60(b) motion lies within the sound discretion of the trial court and, absent a showing of an abuse of that discretion, will not be disturbed on appeal. *Goodman Assocs., LLC v. WP Mountain Props., LLC,* 222 P.3d 310, 314 (Colo.2010). To constitute an abuse of discretion, the trial court's ruling must be manifestly arbitrary, unreasonable, or unfair, or be based on a misunderstanding of the law. *Hock v. N.Y. Life Ins. Co.,* 876 P.2d 1242, 1251 (Colo.1994).

### B. Relevant Law

¶ 66 A new trial motion should be denied "where the error did not prejudice or harm the party seeking a new trial, or where the trial resulted in substantial justice." *McLaughlin v. BNSF Ry. Co.,* 2012 COA 92, ¶ 17, 300 P.3d 925 (citation omitted). "The moving party has the burden of establishing the grounds for relief under C.R.C.P. 60(b) by clear, strong, and satisfactory proof." *Antolovich v. Brown Grp. Retail, Inc.,* 183 P.3d 582, 604 (Colo.App.2007) (citation omitted).

¶ 67 A disclosure violation may provide grounds for post-trial relief, but "the challenged behavior must substantially have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial." *Id.* (quoting *Anderson v. Cryovac, Inc.,* 862 F.2d 910, 924 (1st Cir.1988)); *see also Aspen Skiing Co. v. Peer,* 804 P.2d 166, 174 (Colo.1991) (relying on federal decisions to interpret C.R.C.P. 60(b)).

¶ 68 Under C.R.C.P. 26(a)(1), "all parties must make mandatory, automatic disclosure of certain key information to their opponents early in the handling of the case and without request by the opponent." *Averyt v. Wal–Mart Stores, Inc.,* 265 P.3d 456, 460–61 (Colo.2011) (citation omitted). In the event of a C.R.C.P. 26(a)(1) violation, the wronged party may seek sanctions under C.R.C.P. 37, "ranging from monetary sanctions and orders prohibiting a disobedient party from entering certain documents or items into evidence, to orders deeming nondisclosed information admitted." *Pinkstaff v. Black & Decker (U.S.) Inc.,* 211 P.3d 698, 704 (Colo.2009).

¶ 69 "Generally, sanctions under Rule 37 should serve to cure discovery problems...." *Cornelius v. River Ridge Ranch Landowners Ass'n,* 202 P.3d 564, 571 (Colo. 2009). Because sanctions short of dismissal or entry of default judgment protect the innocent party by leveling the playing field at trial, the appropriate remedy for a C.R.C.P. 26 violation is "not to seek reversal after an unfavorable verdict, but a request for continuance at the time the surprise occurs." *An-*

---

11. GHDC's C.R.C.P. 60(b) motion was not filed until August 6, 2014, just over a year after trial had concluded.

*tolovich,* 183 P.3d at 604 (citation omitted); *see Tiller v. Baghdady,* 294 F.3d 277, 281 (1st Cir.2002).

## C. Analysis

¶ 70 As discussed above, a party may be granted a new trial by demonstrating that misconduct by another party substantially interfered with its ability "fully and fairly to prepare for and proceed at trial." *Antolovich,* 183 P.3d at 604 (quoting *Anderson,* 862 F.2d at 924); *see also Aspen Skiing Co.,* 804 P.2d at 174. In this case, however, the trial court made specific findings regarding the undisclosed activities of the expert. The trial court found that none of these activities suggested that the expert reviewed new information or documents that had not been previously disclosed to GHDC or did anything that could conceivably have been construed as creating surprise. Furthermore, the trial court noted that because GHDC did not point out any specific testimony that may have resulted from the noted activities or was a surprise to GHDC, the court was unable to find that GHDC was prejudiced and could not adequately defend against the evidence.

¶ 71 The record supports the trial court's findings. In addition to providing the expert reports prior to trial, the parties exchanged voluminous exhibits and documents that provided the basis for each expert opinion. Although an invoice submitted by TSG reflected the expert's activities prior to trial, such as review of documents, hiking the terrain that was at issue, and meetings with the attorneys and a surveyor, as the trial court concluded, these activities appear to be in the nature of trial preparation.

¶ 72 Finally, GHDC has not pointed to any specific instances which demonstrate that TSG failed to disclose information that affected GHDC's ability to fairly and fully prepare for trial. GHDC's assertions that it was prejudiced were conclusory allegations that its ability to cross-examine TSG's expert and to rebut his testimony had been compromised.

¶ 73 On appeal, GHDC asserts that the expert's testimony about the Stargazer lode and the Wasatch connection was new information that involved a key issue in the case. However, that testimony was based generally on the expert's hikes through the terrain, which were disclosed as one basis for his expert opinion in his initial disclosure.[12] Additionally, GHDC admits that the expert's opinion concerning the transportation of equipment by way of the Wasatch trail was within the scope of his original report.

¶ 74 Significantly, GHDC made no trial objection that it was surprised by any aspect of the expert's testimony. A party's delay in objecting to allegedly inadequate expert witness disclosures is properly considered in determining whether the party was prejudiced. *See In re Marriage of Woolley,* 25 P.3d 1284, 1287 (Colo.App.2001) (noting delayed objection to designation of expert); *Perkins v. Flatiron Structures Co.,* 849 P.2d 832, 835 (Colo.App.1992) (where plaintiffs waited until hearing to object to C.R.C.P. 16 violation of expert disclosure requirement, delay in objecting was properly considered in resolving the issue).

¶ 75 We conclude that the trial court did not abuse its discretion in denying GHDC's motion for a new trial.

## IX. Conclusion

¶ 76 The judgment and order are affirmed.

JUDGE FURMAN and JUDGE ASHBY concur.

## Appendix 1

---

12. The expert witness disclosure noted the expert's familiarity with the Gold Hill and Bear Creek areas based on over thirty years of working in the area as a land surveyor and also having skied and hiked extensively in the area during that time.